[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on October 19, 1991 in Trumbull, Connecticut. There are no children issue of the marriage although each of the parties has grown children from former marriages. Each of the parties is fifty-four years of age. This is the plaintiff's fourth marriage and the defendant's third marriage.
While the marriage was but three years, eight and three fourths months' duration, the parties started living together the end of 1989. In May, 1991, the plaintiff purchased a home in Trumbull for $325,000 with $102,000 of her own funds and $225,000 borrowed from the defendant. On October 28, 1991, the plaintiff quitclaimed a joint and survivor interest to the defendant and the mortgage given to him to secure the $225,000 loaned by him was released. (See defendant's exhibit 2.)
The plaintiff has been employed since 1988 as a real estate salesperson. She presently works for William Raveis Real Estate in Trumbull. Her gross earnings for 1988 were $10,500 with net CT Page 4507 earnings of $2306; for 1989 $14,976 with net earnings of $2019; for 1990, $8362 with net earnings of $1689; for 1992, $2364 with a net loss of $7458; for 1993 $7116 with a net loss of $2376; for 1994, $13,571 with net earnings of $7453; and for 1995, $4453 with net earnings of $1004. (See plaintiff's exhibits A, B, C, D, E, F, and G.) For the year 1996 to date, the plaintiff has received $4855 in commissions.
Until June of 1992, the plaintiff was able to work only part time. During the period of time that the parties were living together and until June, 1992, the plaintiff cared for her invalid father who lived with them. The care for her father was extensive, so that the time the plaintiff had to devote to her business during this period was about half of a normal working day. She is a college graduate having graduated from Boston University with a Bachelor of Arts degree with a major in French and psychology. While the defendant has argued that she could teach, she has never taught. She would need additional education and certification before she would be qualified to teach.
The plaintiff's health is generally good, although she has high blood pressure and suffers from allergies. She and the defendant have medical insurance under a private medical plan paid for by the defendant.
The dissolution proceeding was commenced by the plaintiff on July 12, 1995. Upon agreement of the parties, the defendant vacated the family home on December 17, 1995. At that time, the defendant took most of his tangible personal property. The plaintiff has testified that there are some chairs, tables and books still at the house that are his in the basement available to him at any time upon appropriate arrangement. The defendant moved to his mother's residence in Bridgeport and has remained living at his mother's residence since December 17.
In addition to her real estate sales business, the plaintiff during 1991 engaged in selling water filtration systems. She invested $5,000 in this business and sold her inventory. In 1994 and 1995, the plaintiff started a business selling Amway products. In 1994, her gross sales were $316 with expenses of $5,887. (See plaintiff's exhibit F.) There is no evidence of her earnings selling Amway products in 1995. While the plaintiff has done volunteer work in the past and sold dance costumes in the late 1970's, it is clear from the evidence that her ability to earn is primarily in sales and that her best income has been realized in CT Page 4508 real estate sales.
The defendant works as a sign painter and has done so all of his working life. He has a GED degree and, until September, 1993, owned his own business known as Archer Signs. In the latter part of 1993, he sold a half interest in this business to an employee, one John Leary. During the years 1994 and 1995, the defendant received $65,000 per year from the business and Mr. Leary $35,000 per year from the business with an equal division of the profits above these amounts (see defendant's exhibit 7, paragraph 10). Beginning with January 1, 1996, the partners equally divide all profits and losses of the partnership. In the year 1995, the defendant's income from the partnership was $95,960 (see plaintiff's exhibit A). In 1994, it was $70,645 and in 1993 it was $114,537. (See plaintiff's exhibits E and F.) His financial affidavit of May 21, 1996 shows gross weekly income of $1405 and net income of $726. The $1405 per week has been described as "a representative amount he will be drawing from the company." The Archer Sign partnership return for the year 1994 reflected partnership income of $233,354 and for the year 1995, $292,540.
The defendant describes his health as "generally not bad". He suffers from allergies. He was in two automobile accidents in 1986 and suffered a 10 percent disability of the upper portion of his neck. He has very little feeling in the four fingers of his left hand as a result of a pinched nerve in his neck. This physical problem has not, however, affected his ability to work in the sign business.
The defendant had owned a home in Stratford at the time the parties began living together. He sold this home in September, 1990 realizing $92,867 in the sale. As previously noted, he contributed $225,000 to the purchase of the family home in Trumbull. That house is to be sold for $333,000 less a commission of five percent and subject to the usual closing adjustments. The parties will realize $316,500 less adjustments and attorney's fees.
The defendant has a defined benefit retirement plan with Fidelity Investments. As of May 24, 1996, this plan was valued at $346,482. In addition, there is a joint account at Fidelity Investment with a balance of cash and securities of $109,872 as of May 24. (See plaintiff's exhibit L.) The parties have each received $8800 from this account since this balance. Additionally, the defendant has a defined benefit plan with A. G. CT Page 4509 Edwards and Paulson with a value of $114,131 for both, an IRA worth $11,464 and a half interest in Archer Sign valued at $110,000 in his financial affidavit. The defendant claims his total estate was worth more in October, 1991 when the parties were married. He may well be right, and his total assets could have been $75,000 more.
Excluding her household furnishings and jewelry, the plaintiff's assets were approximately $102,000 at the time of the purchase of the Trumbull house.
The joint Fidelity account is, in reality, the excess earnings of the defendant. The cash portion of the account was used as a checking account for all family expenses including credit card payments, medical expenses, taxes and cash in addition to a payment of $33,292 to Fidelity Investments DeFined Benefit Plan as the defendant's contribution for the year 1994 (see plaintiff's exhibit I).
The marriage of the parties has broken down irretrievably. The plaintiff complained that the defendant's attitude changed after their marriage, that he would become very angry and filled with rage and complained that she was old, ugly and useless. The defendant felt that the plaintiff was not carrying her weight as a partner in the marriage. They sought marriage counseling, attended for ten or eleven sessions but without success.
Under the provisions of § 46b-81 (c) of the General Statutes, the court must consider numerous factors in assigning the property of the parties including the length of the marriage, the cause for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties and the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. Siracusa v.Siracusa, 39 Conn. App. 560, 566 (1993).
While the plaintiff has a joint interest in the Fidelity Brokerage Account and is a joint owner of the marital home, her investment in that home was but $102,000. Pursuant to the provisions of § 46b-81 (c) of the General Statutes, this court may divide the joint account and the proceeds of sale of the marital residence as it determines after considering the criteria therein set forth. The court is not required to give equal weight to each of these specific criteria. Nevertheless, it is rather obvious CT Page 4510 that in many financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v.Watson, 221 Conn. 698, 710 (1992).
One of the criteria of both § 46b-81 and § 46b-82 of the General Statutes that the court has given particular weight to is the length of the marriage. The marriage has been particularly short. On the other hand, on the issue of alimony, the plaintiff's demonstrated productive capacity has been limited in the past. The plaintiff certainly has at least fifteen good productive years ahead, she is in good health, she has the benefit of a fine college education, is attractive, intelligent and has worked only in sales since 1988. She is capable of some earnings from real estate sales. There has been no evidence of what she might earn on a full time basis. For the court to set any figure would be pure speculation.
The court has considered all of the criteria of §§ 46b-81 and46b-82 and 46b-62 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account", Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman,188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo,197 Conn. 1, 5 (1985).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Neither party is at fault for the breakdown of the marriage.
The court enters the following orders: CT Page 4511
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall have restored to her her former name of Anne S. Coburn.
3. The marital residence at 33 Mallett Drive, Trumbull, Connecticut, shall be sold. The plaintiff shall sign the contract of sale immediately providing for a purchase price of $333,000. The plaintiff shall vacate the premises for delivery of title to the buyers as provided in the contract. Upon the closing, the brokerage commission shall be paid from the proceeds of sale, reasonable attorney's fees and the customary closing adjustments. The remaining proceeds of sale shall be divided 45 percent to the plaintiff and 55 percent to the defendant. The plaintiff shall contribute 45 percent of the cost of all expenses necessary regarding the pool on the premises to satisfy the requirements of the sale, such sum to be deducted from the plaintiff's share of the proceeds of sale; the defendant to pay the necessary expenses and to be reimbursed from the plaintiff's share of the proceeds.
4. The joint Fidelity Brokerage Account shall be divided equally between the parties. In view of the court's orders in this respect, no adjustments between the parties are necessary.
5. The defendant shall have the following items of tangible personal property to be his free of any claim or demand by the plaintiff: the couch in the basement, certain books, chairs and boxes set aside by the plaintiff in the basement of the marital residence, one half of the liquor, the pool table and its accessories, the industrial vacuum, the lace bed cover and comforter, the handmade quilt made by his daughter and the beige vase together with those items of tangible personal property in his possession.
6. The plaintiff shall have as hers free of any claim or demand by the defendant her household furnishings which shall include all the remaining items of tangible personal property at 33 Mallett Drive in Trumbull.
7. The plaintiff shall have as hers free of any claim or demand by the defendant her jewelry. CT Page 4512
8. The plaintiff shall have as hers free of any claim or demand by the defendant her Toyota Camry automobile, her Fleet savings and checking accounts and her A. G. Edwards Sons, Inc. account.
9. The defendant shall have as his free of any claim or demand by the plaintiff his 1990 Jeep Cherokee, his guns, his boats, the Chase Personal Checking account, the Fleet Business checking account, the Kemper Mutual Fund, his Fidelity Investments Defined Benefit Plan, the Paulson Defined Benefit Plan, the A. G. Edwards Defined Benefit Plan, the Fidelity IRA, his interest in the business known as Archer Sign together with the accounts receivable of such business and his interest in the Spartan Money Market account maintained with his sister and mother.
10. The defendant has no further responsibility for the return of tangible personal property to the plaintiff. The defendant has purged himself of the finding of contempt.
11. The parties shall be equally responsible for the balance of the VISA 1st card as of December 1, 1995. The plaintiff shall be responsible for all charges incurred subsequent to December 1, 1995 and shall indemnify and hold harmless the defendant from any claim or demand thereon.
12. The plaintiff shall be wholly responsible for all amounts owed on the MBNA Visa and Master Card and the USAA Visa and shall indemnify and hold harmless the defendant from any claim or demand thereon. The defendant shall be wholly responsible for the outstanding indebtedness to Derby Savings Bank and that indebtedness shown on his financial affidavit to the Internal Revenue Service and State of Connecticut Department of Revenue Services and shall indemnify and hold harmless the plaintiff to the extent she may have any liability from any claim or demand thereon.
13. The defendant shall pay to the plaintiff the sum of Three Hundred ($300.00) Dollars per week by way of alimony commencing June 28, 1996 and payable each week thereafter for a period of four years. Thereafter said alimony shall reduce to $1.00 per year. Should there be any subsequent modification of alimony, the court shall consider as one of the indicia of § 46b-82 the length of the parties' marriage. CT Page 4513 Until June 28, 1996, the pendente lite orders shall continue in full force and effect.
14. The defendant shall provide continuing medical insurance for the plaintiff's benefit for ninety (90) days from June 28, 1996.
15. Each party shall be solely responsible for her or his own attorney's fees incurred in connection with this action.
Orders shall enter in accordance with the foregoing.
EDGER W. BASSICK, III, JUDGE