### STATE OF CONNECTICUT *v.* MANUEL ROSARIO (13317)

Foti, Heiman and Schaller, Js.

Argued May 25—decision released September 26, 1995

*Pamela S. Meotti,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Paul Murray,* assistant state's attorney, for the appellant (state).

*Stephen V. Moran,* assistant public defender, for the appellee (defendant).

FOTI, J. In this case, the state appeals, with the permission of the trial court,[1] from a decision of the trial court granting the defendant's motion to suppress certain evidence obtained pursuant to a search warrant. The sole issue presented on appeal is whether the trial court improperly granted the defendant's motion to suppress the evidence seized in a search of the defendant's residence. We affirm the trial court's judgment.

On January 6, 1993, an application for a search warrant, including a supporting affidavit, was submitted to and signed by a judge of the Superior Court. The information in the affidavit may be summarized as follows. On *January 6, 1992,* Anthony Battistone and Arvid Leftwich, detectives with the Hartford police

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

department (affiants), met with a confidential informant who told them that the defendant was selling drugs and that the defendant lived in the first floor apartment at 57 Benton Street in Hartford. The informant stated that he had been in the defendant's apartment when another man came in and asked for a "package." "Package" is the street term for 100 single packets of heroin. The man then handed the defendant money. The defendant took the money and told the informant to follow him to the basement. Once in the basement, the defendant told the informant to open the icebox and to remove a red plastic bag containing heroin. The defendant then opened a gray safe on the floor of the basement that contained more heroin and money. The defendant brought the heroin to the man and the informant then left the apartment and contacted the affiants.

The informant worked with the affiants to conduct a controlled purchase of narcotics from the defendant's residence. Information about the controlled purchase formed the basis for a search warrant that, according to the affidavit, was executed on *January 6, 1992*. The affidavit does not describe the controlled purchase but provides the following: "See Hartford Police Case Number 93-922 for information concerning the controlled purchase." The affidavit also provides that when the affiants executed the first of two search warrants on *January 6, 1992*, a woman named Alida Nieves, who lived with the defendant, said that the drugs were in the basement. On the basis of that information, the affiants obtained a second search warrant for the basement area of 57 Benton Street. The affidavit was signed and dated *January 6, 1993*, by the affiants and the issuing judge. The warrant was also signed and dated *January 6, 1993*. The search yielded $11,761 in cash, a clear plastic bag containing a white powdery substance,

414 yellow glassine bags containing a white powdery substance, a scale, a grinder, a bottle of white lactose powder, and other drug paraphernalia. The defendant was arrested and charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[2] conspiracy to distribute narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-48,[3] and possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a).[4]

On November 18, 1993, the defendant moved to suppress the evidence obtained pursuant to the warrant on the ground that the information contained in the supporting affidavit was stale. He noted that the affidavit, which supported a warrant that was signed on *January 6, 1993*, referred to information allegedly obtained on *January 6, 1992*. The state argued that the references to 1992 contained in the affidavit were scrivener's errors that did not invalidate the warrant. The defendant made a subsequent oral motion to suppress on November 24, 1993, and on January 5, 1994, the trial court,

[2] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who . . . possesses with the intent to sell or dispense . . . any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who . . . possesses with the intent to sell or dispense . . . any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . ."

*Miano, J.,* issued an oral decision granting that motion. On January 26, 1994, the trial court dismissed the charges against the defendant on the state's representation that, without the evidence, the state could not proceed. The trial court then granted the state permission to appeal pursuant to General Statutes § 54-96.

On appeal, the state argues that the trial court improperly granted the defendant's motion to suppress evidence and that the trial court should have deferred to the issuing judge's determination that timely probable cause existed to support the warrant. The state contends that a common sense reading of the affidavit establishes that the events described in the affidavit occurred in 1993 and that the references to 1992 were scrivener's errors that did not affect the defendant's substantive rights. The state notes that it was reasonable for the issuing judge to reach that conclusion and that the trial court improperly failed to defer to the reasonable conclusions drawn by the issuing judge. We disagree.

"The standard of review of an issuing judge's determination that probable cause existed to issue a search warrant is to consider the information before the issuing judge at the time of the issuance of the warrant, together with the reasonable inferences drawn from such information, in the light most favorable to the issuing judge's determination of probable cause. . . . In determining whether probable cause exists to conduct a search, a totality of the circumstances test is used. . . . In determining the existence of probable cause to search, the magistrate should make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citations omitted; internal quotation marks omitted.) *State* v. *Sivri,* 231 Conn. 115, 141–42, 646 A.2d 169 (1994).

" 'The determination of probable cause to conduct a search depends in part on the finding of facts *so closely related to the time of the issuance of the warrant* as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable.' " (Emphasis added.) Id., 145–46. While the question of staleness must be determined on a case-by-case basis; *State* v. *Ives*, 37 Conn. App. 40, 47, 654 A.2d 789 (1995); the facts and circumstances set forth in a supporting affidavit should be current and timely, so as to indicate that the premises, person, place or thing to be searched presently contains the fruits of the crime. *State* v. *Rose*, 168 Conn. 623, 631, 362 A.2d 813 (1975).

"[I]n determining the adequacy of an affidavit in support of a search warrant, the information to establish probable cause must be found within the affidavit's four corners." *State* v. *Colon*, 230 Conn. 24, 34, 644 A.2d 877 (1994); see *State* v. *Zarick*, 227 Conn. 207, 217–18, 630 A.2d 565 (1993). "We have laid heavy emphasis on the need for protecting the integrity of the warrant-issuing process . . . . When a police officer seeks a search warrant in this state . . . he knows or should know that the validity of his ensuing search will be gauged by the four corners of the documents that he presents in support of his application." *State* v. *Jacobs*, 229 Conn. 385, 393, 641 A.2d 1351 (1994).

The state contends that there are several factors that can be gleaned from the four corners of the warrant that indicate that the reference to the year 1992 was a scrivener's error. The state points out that the affidavit refers to a controlled purchase of narcotics that was used as the basis for obtaining a search warrant on January 6, 1992, and to Hartford police case number

93-922 for information about the controlled purchase. The state argues that it would be inconsistent for an event occurring in January, 1992, to be given a 1993 case number. Other factors also indicate that the reference to 1992 was incorrect. The state points out that the date in the body of the affidavit—January 6, 1992—preceded the date on which the affidavit and warrant were signed by one year, and that it was unlikely that the affiants would wait exactly one year from the date they obtained their information before seeking a warrant. The state notes that the events in question occurred during the first week of January, a time when people often err in writing the year.

The state argues that on that basis of these factors gleaned from the four corners of the warrant application, the issuing judge could reasonably have inferred that the events in the affidavit occurred in 1993 and the reference to 1992 was a scrivener's error. The state contends that a mere clerical error does not invalidate an otherwise proper warrant. The trial court, however, following the suppression hearing, concluded that "there [is] nothing in the body of the warrant to suggest or from which the court can reasonably infer a scrivener's error." The trial court noted that 1992 appeared five times in the affidavit, and it was consistent throughout the affidavit. The trial court noted that in determining whether timely probable cause existed to support the search warrant, it was bound by the four corners of the affidavit. It concluded that the information contained therein was stale.[5]

It is true that "[w]hen a magistrate has determined that the warrant affidavit presents sufficient objective

---

[5] The trial court stated: "[I]f the officers for whatever reason could have sat on the warrant before they brought it to a magistrate for a year, that's unlikely. I don't think reasonable, efficient officers would do that. I'm bound by the four corners of the affidavit. And I think here, I can only conclude that there's a staleness issue here. And I think I'd be inviting speculation

indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate." *State* v. *Barton*, 219 Conn. 529, 544–45, 594 A.2d 917 (1991). The trial court concluded, however, and we agree, that there was nothing in the body of the affidavit to allow a reasonable inference that the information was gathered on any date other than January 6, 1992.[6] The trial court correctly limited its review to the four corners of the affidavit.[7] See *State* v. *Diaz*, 226 Conn. 514, 543–44 n.16, 628 A.2d 567 (1993). This limitation applies to an appellate court reviewing the same warrant application. Id. Based on the four corners of the affidavit, there was a one year lapse between the findings of fact relied on by the affiants and the issuing judge, and the issuance of the warrant. The findings were not so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause.[8]

---

to say the policemen wouldn't wait a year. That's taking things into consideration outside the four corners."

[6] The trial court could not afford deference to the issuing judge because it could not speculate, as we cannot speculate, that the issuing judge either observed the five references to 1992 or considered them to be scrivener's errors.

[7] We find the state's contention that the trial court should have considered extrinsic evidence of the alleged scrivener's errors to be without merit. As noted, the information establishing probable cause must be found within the four corners of the affidavit. The trial court properly refused to consider information regarding a previous warrant, as well as the testimony of the affiants or the issuing judge. The state's reliance on *State* v. *Colon*, supra, 230 Conn. 24, is misplaced. In that case, our Supreme Court held that extrinsic evidence can be used to determine whether an affidavit has been validly executed. Id., 34. The court distinguished the jurat, which is evidence of the fact that the affidavit was validly executed, from the body of the affidavit. The court reaffirmed the holding that probable cause must be determined from the four corners of the warrant. Id.

[8] In light of our decision upholding the trial court's conclusion that there was nothing in the affidavit to allow a reasonable inference that the reference to 1992 was a scrivener's error, we need not address the state's claim that a mere clerical or technical error should not invalidate a warrant.

In *State* v. *Abbott*, 5 Conn. App. 441, 499 A.2d 437 (1985), we rejected the defendant's argument that probable cause was lacking due to the staleness of the statements made by the informants thirty to ninety days prior to the issuance of the warrant. We held that "[e]ven if we assume without deciding that such a delay would be the basis of a valid staleness claim if the statements were all that the magistrate had to rely on, such statements may be considered with the rest of the affidavit as part of the mosaic of probable cause. Other material in the affidavit may supplement and bring down to date the earlier materials . . . thus giving reason to believe that those circumstances still exist." (Citation omitted; internal quotation marks omitted.) Id., 445. Here, the state points to no other information in the affidavit that supplements and revitalizes the information dated one year earlier. There is no other information that gave reason to believe that drugs were currently being sold at the defendant's residence.

The state argues that the trial court incorrectly engaged in a de novo review of whether timely probable cause existed to support the search warrant, rather than deferring to the reasonable conclusions drawn by the issuing judge. We disagree. "The role of a reviewing court in assessing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed." (Internal quotation marks omitted.) *State* v. *Radicioni*, 32 Conn. App. 267, 272, 629 A.2d 432, remanded for reconsideration, 227 Conn. 921, 632 A.2d 698, rev'd, 33 Conn. App. 903, 633 A.2d 739 (1993); see *State* v. *Duntz*, 223 Conn. 207, 215, 613 A.2d 224 (1992). In its decision, the trial court stated that it could "consider only the information that [was] actually before the issuing judge at the time he or she signed the warrant." The court discussed the reasons for its finding that the information in the affidavit was

stale. It applied the proper standard of review and considered only the information before the issuing judge at the time of the issuance of the warrant. *State* v. *Sivri*, supra, 231 Conn. 141–42.

"It has long been recognized that . . . rules of criminal procedure are to be strictly construed to protect the fundamental constitutional right to liberty." *State* v. *Cook*, 183 Conn. 520, 522, 441 A.2d 41 (1981). Our Supreme Court has specifically directed that strict construction of statutory provisions pertaining to search warrants is imperative. See *State* v. *Surowiecki*, 184 Conn. 95, 98, 440 A.2d 798 (1981).

We conclude that the affidavit includes facts too remote in time to have constituted probable cause on the date of the search. The search warrant was therefore based on stale information when it was executed and the subsequent seizure of evidence was invalid.

The judgment is affirmed.

In this opinion HEIMAN, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the result reached in the majority opinion. I agree with the majority's statement of the pertinent law. I disagree, however, with respect to the pivotal issue, that is, whether the trial court, in applying the substantial factual basis test, engaged in de novo review or whether it gave proper deference to the reasonable inferences drawn by the issuing judge. I believe the trial court reached its own decision as to what reasonable inferences should be drawn concerning staleness rather than deferring to the issuing judge's reasonable inferences that led him to find probable cause.

The majority has accurately stated the facts contained within the four corners of the affidavit. As the state's brief indicates, however, the warrant in question was the second of two search warrants pertaining to

57 Benton Street in Hartford, issued on January 6, 1993, by different judges. The first warrant affidavit related facts relating to a controlled purchase of narcotics on January 5, 1993, at the first floor apartment at that address. The first warrant application, which concerned the first floor apartment, was signed by Judge Samuel S. Goldstein and executed on January 6, 1993. Because the police obtained information that the narcotics had been moved to the basement of the building, they did not pursue the matter and, instead, applied for a second warrant, the subject of this case. All the information contained in the second warrant affidavit, in fact, was obtained on January 6, 1993, not 1992, as the affidavit incorrectly stated.

Judge Raymond R. Norko found probable cause and issued the second search warrant on January 6, 1993. That search resulted in the seizure of a substantial amount of cash and narcotics. It is evident from the fact that Judge Norko found probable cause that he reasonably inferred from the facts in the affidavit that the references to January 6, 1992, were scrivener's errors and that the underlying information actually was obtained on January 6, 1993. We are entitled to presume that the issuing judge properly considered all the facts submitted for his consideration. Cf. *Solomon* v. *Aberman*, 196 Conn. 359, 376, 493 A.2d 193 (1985). Because the underlying information, therefore, was not stale, probable cause existed.

When determining if an affidavit in support of a search warrant presented a substantial factual basis on which a magistrate could have found probable cause, "[w]e are confined to the facts that appear on the face of the affidavit and those facts that may properly be inferred therefrom, testing those facts with common sense and reality and with great deference to the fact that the issuing magistrate found probable cause." *State* v. *Vincent*, 30 Conn. App. 249, 252, 620 A.2d 152 (1993);

see *Illinois* v. *Gates*, 462 U.S. 213, 235–36, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *United States* v. *Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

The trial court, however, in ruling on the motion to suppress, declined to defer to the issuing judge's inferences and, instead, reached its own decision as to what inferences were reasonable. I note that, in doing so, the trial court had before it the factors on which the issuing judge drew his reasonable inferences. The trial court took judicial notice of the fact that "upon embarking upon a new year often times one may, in error, record the previous calendar year." The trial court also noted that it was unlikely that the police officers "could have sat on the warrant before they brought it to a magistrate for the year." The attention of the trial court was also drawn to the body of the affidavit that contained a reference to Hartford police case number 93-922 for information about the controlled purchase, a crucial factor supporting the warrant application. As the issuing judge was obviously aware, it is not possible for a controlled purchase on January 6, 1993, to form the basis for a warrant issued on January 6, 1992. See *State* v. *Amendola*, 152 Conn. 166, 204 A.2d 836 (1964).

Those factors, in my view, provided Judge Norko with a sufficient basis fully within the four corners of the affidavit on which to draw a reasonable inference that the information in the warrant affidavit was timely. Our law is clear that "[w]hen a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inference drawn by the magistrate." *State* v. *Barton*, 219 Conn. 529, 544–45, 594 A.2d 917 (1991). Our Supreme Court has repeatedly held that a reviewing court must uphold "the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual

basis [including the inferences reasonably drawn from the affidavit] for the magistrate's conclusion that probable cause existed." (Internal quotation marks omitted.) *State* v. *DeFusco*, 224 Conn. 627, 642, 620 A.2d 746 (1993).

Our Supreme Court has also stated that "[i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's . . . conclusion that the affidavit established probable cause." (Citations omitted; internal quotation marks omitted.) Id. "[A]ffidavits for search warrants . . . must be tested and interpreted by magistrates in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States* v. *Ventresca*, supra, 380 U.S. 108. "Probable cause is a flexible common sense standard. . . . It deals with probabilities, and the application of the factual and practical considerations of everyday life on which reasonable and prudent men act." (Citations omitted; internal quotation marks omitted.) *Adriani* v. *Commission on Human Rights & Opportunities*, 228 Conn. 545, 549–50, 636 A.2d 1360 (1994). "It was former Chief Justice Roger J. Traynor of the Supreme Court of California who once stated that judges must keep 'the peace between the Constitution and common sense.' R. Traynor, 'The Devils of Due Process in Criminal Detection, Detention, and Trial,' 33 U. Chi. L. Rev. 657, 680 (1966)." *State* v. *Miller*, 29 Conn. App. 207, 246, 614 A.2d 1229 (1992) (*Norcott, J.*, dissenting), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993). Because the trial court in this case did not defer appropriately to the issuing judge's reasonable inferences, I would reverse the judgment of the trial court.

Accordingly, I respectfully dissent.