# STATE OF CONNECTICUT *v.* MANUEL ROSARIO
## (15331)

Peters, C. J., and Callahan, Borden, Norcott and Katz, Js.

Argued May 29—officially released July 30, 1996

*Jack W. Fischer*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Paul Murray*, senior assistant state's attorney, and *Pamela S. Meotti*, former deputy assistant state's attorney, for the appellant (state).

*Stephen V. Moran*, assistant public defender, for the appellee (defendant).

NORCOTT, J. The dispositive question in this certified appeal by the state is whether the Appellate Court improperly concluded that the issuing magistrate could not have inferred that the references in the search warrant affidavit to "January 6, 1992," were scrivener's errors. We answer this question in the affirmative and, accordingly, reverse the judgment of the Appellate Court.[1]

---

[1] This court granted the state's petition for certification to appeal limited to the following issues: "1. Did the Appellate Court improperly conclude that the issuing magistrate could not have inferred that the references in the search warrant affidavit to 'January 6, 1992,' rather than 'January 6, 1993,' were scrivener's errors?" and "2. If the answer to the first question is no, should the Appellate Court have remanded the case for a hearing on whether those references were scrivener's errors?" *State* v. *Rosario*, 235 Conn. 932, 667 A.2d 1270 (1995).

The facts of this case are set forth in the majority opinion of the Appellate Court. *State* v. *Rosario*, 39 Conn. App. 550, 665 A.2d 152 (1995). "On January 6, 1993, an application for a search warrant, including a supporting affidavit, was submitted to and signed by a judge of the Superior Court. The information in the affidavit may be summarized as follows. On *January 6, 1992*, Anthony Battistone and Arvid Leftwich, detectives with the Hartford police department (affiants), met with a confidential informant who told them that the defendant was selling drugs and that the defendant lived in the first floor apartment at 57 Benton Street in Hartford. The informant stated that he had been in the defendant's apartment when another man came in and asked for a 'package.' 'Package' is the street term for 100 single packets of heroin. The man then handed the defendant money. The defendant took the money and told the informant to follow him to the basement. Once in the basement, the defendant told the informant to open the icebox and to remove a red plastic bag containing heroin. The defendant then opened a gray safe on the floor of the basement that contained more heroin and money. The defendant brought the heroin to the man and the informant then left the apartment and contacted the affiants.

"The informant worked with the affiants to conduct a controlled purchase of narcotics from the defendant's residence. Information about the controlled purchase formed the basis for a search warrant that, according to the affidavit, was executed on *January 6, 1992*. The affidavit does not describe the controlled purchase but provides the following: 'See Hartford Police Case Number 93-922 for information concerning the controlled purchase.' The affidavit also provides that when the affiants executed the first of two search warrants on *January 6, 1992,* a woman named Alida Nieves, who lived with the defendant, said that the drugs were in

the basement. On the basis of that information, the affiants obtained a second search warrant for the basement area of 57 Benton Street. The affidavit was signed and dated *January 6, 1993*, by the affiants and the issuing judge. The warrant was also signed and dated *January 6, 1993*. The search yielded $11,761 in cash, a clear plastic bag containing a white powdery substance, 414 yellow glassine bags containing a white powdery substance, a scale, a grinder, a bottle of white lactose powder, and other drug paraphernalia. The defendant was arrested and charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[2] conspiracy to distribute narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-48,[3] and possession of narcotics with intent to sell in violation of General Statutes § 21a-277

[2] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

[3] General Statutes § 53a-48 provides: "Conspiracy. Renunciation. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

(a)."[4] (Emphasis in original.) *State* v. *Rosario*, supra, 39 Conn. App. 551–53.

The defendant moved to suppress the evidence obtained pursuant to the second warrant on the ground that the information contained in the supporting affidavit was stale. In support of his motion he noted that the affidavit supporting the second warrant was signed on January 6, 199*3*, but referred to information allegedly obtained on January 6, 199*2*. The state responded that the references to 1992 in the challenged affidavit were obvious scrivener's errors that did not invalidate the warrant. Id., 553.

On January 5, 1994, the trial court granted the defendant's motion, in an oral decision from the bench, holding that it found no reasonable grounds to infer that the challenged dates were scrivener's errors and that, accordingly, there was no "timely probable cause." Id., 553-54. Thereafter, on January 26, 1994, the state represented that it was unable to proceed with its prosecution against the defendant without the suppressed evidence, and, on the basis of that representation, the trial court dismissed the charges against the defendant. Id., 554. The trial court then granted the state permission to appeal pursuant to General Statutes § 54-96.[5] Id.

---

[4] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[5] General Statutes § 54-96 provides: "Appeals by the state from superior court in criminal cases. Appeals from the rulings and decisions of the supe-

The Appellate Court, with one judge dissenting, affirmed the judgment of the trial court. Applying the "four corners" rule strictly, it concluded that there was no basis within the four corners of the affidavit to infer that the references to the year 1992 were scrivener's errors and, therefore, that the challenged search warrant was based on stale information when it was executed. Id., 559. We disagree.

The standards for upholding a search warrant are well established. We uphold "the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed."[6] (Internal quotation marks omitted.) *State* v. *Duntz*, 223 Conn. 207, 215, 613 A.2d 224 (1992). "[T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." *State* v. *Barton*, 219 Conn. 529, 544–45, 594 A.2d 917 (1991). We are also reminded that "[i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination." *State* v. *Johnson*,

---

rior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

[6] The defendant concedes that this claim constitutes the only valid challenge to the finding of probable cause under the circumstances of this case.

219 Conn. 557, 565, 594 A.2d 933 (1991); see also *State* v. *DeFusco*, 224 Conn. 627, 642, 620 A.2d 746 (1993). Lastly, it is well established that, in reviewing a search warrant affidavit, "[t]he reviewing court may consider only the information that was actually before the issuing judge at the time he or she signed the warrant." ( Internal quotation marks omitted.) *State* v. *Shifflett*, 199 Conn. 718, 746, 508 A.2d 748 (1986). In the absence of a showing that the information contained in the warrant is false or misleading or that there is a material omission from the affidavit; see *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); a hearing on a motion to suppress is limited to a review of the four corners of the affidavit. *State* v. *Diaz*, 226 Conn. 514, 543–44 n.16, 628 A.2d 567 (1993).

The question in this case is whether the issuing magistrate could have reasonably inferred from the information contained in the affidavit dated January 6, 1993, that the internal dates of January 6, 1992, rather than January 6, 1993, were mere scrivener's errors that did not invalidate the search warrant. We conclude that the information contained in the affidavit was sufficient to support the issuing magistrate's finding of probable cause and that, consequently, the trial court should have deferred to the magistrate's issuance of the warrant based upon the record. Specifically, that record clearly supports the inference that the 1992 dates in the affidavit were scrivener's error and, therefore, did not undermine the magistrate's determination that probable cause existed for the issuance of the warrant.

Not every discrepancy in an affidavit supporting a search warrant is fatal. "[R]eference to a year other than the current year will not invalidate the warrant if the circumstances fairly indicate that the intended reference was to the current year." 2 W. LaFave, Search and Seizure (3d Ed. 1996) § 3.7 (b), p. 362. Indeed, other jurisdictions have held in cases similar to the present

one that a commonsense reading of the affidavit justified the conclusion that a misstated date was mere scrivener's error. See *State* v. *White*, 368 So. 2d 1000, 1001 (La. 1979) (although affidavit stated that underlying information was obtained on January 12, 1977, commonsense reading justified conclusion that proper date was January 12, 1978, when warrant was issued); *State* v. *Marquardt*, 43 Or. App. 515, 517, 603 P.2d 1198 (1979) (where affidavit stated that certain observations occurred on February 3, 1978, and search warrant was obtained on February 3, 1979, it was proper to assume that there was scrivener's error because it "hardly seems likely that the affiant would wait exactly one year from the date he obtained his information and then seek a warrant at 11 p.m."); *Green* v. *State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990).

Further, a hypertechnical application of the "four corners" rule that governs the judicial review of the adequacy of search warrant affidavits should not preclude the application of common sense to conclude that probable cause supports the warrant. "The purpose of the affidavit . . . is to 'enable the issuing authority to weigh the persuasiveness of the facts relied upon by the affiant or complainant, and, from them, to determine whether the necessary probable cause exists for the issuance of the warrant.' *State* v. *Allen*, 155 Conn. 385, 391, 232 A.2d 315 (1967)."[7] *State* v. *Colon*, 230 Conn. 24, 34, 644 A.2d 877 (1994).

In the present case, our review of the four corners of the challenged affidavit reveals that there exists strong

---

[7] Indeed, it has been held that if the state is not attempting to add new information to support the establishment of probable cause, but merely attempting to explain and correct an obvious clerical error regarding dates in the warrant, the use of extrinsic evidence is permitted. See *People* v. *Deveaux*, 204 Ill. App. 3d 392, 399, 561 N.E.2d 1259 (1990) ("[t]here is a presumption that the [time] indicated on a search warrant by the issuing judge controls its validity, but extrinsic evidence is permitted to show and correct an obvious clerical error").

evidence that the insertion of the 1992 date was a scrivener's error. The affidavit refers to a controlled purchase of narcotics that the affiants used as a basis for obtaining a prior search warrant. The affidavit states that this warrant was executed on January 6, 1992, but refers to a 1993 Hartford police case number for information concerning the controlled purchase.[8] It is illogical to conclude that a 1992 controlled purchase would carry a 1993 case number. Further, this case involves two search warrants for the same dwelling. The first warrant, executed on January 6, did not result in the seizure of any narcotics. The second warrant affidavit, which is the subject of this appeal, restated the events detailed in the first affidavit but indicated that they had occurred on January 6, 199*2*, instead of 199*3*. We are persuaded that both the police case number and the obviously misdated reference to the first warrant can be incorporated by reference into the challenged affidavits. On the basis of this cross-reference, an issuing magistrate reasonably could have inferred that an inadvertent scrivener's error was at play and, accordingly, have upheld the validity of the affidavit and issued the warrant.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the

---

[8] The pertinent part of the challenged January 6 affidavit provides as follows: "That on the date of January 5, 1992, the affiants with the same reliable and confidential informant began a continuing investigation of 57 Benton Street, Hartford. That this informant gave the same description of the hispanic male known to him/her as Manuel, of 57 Benton St. Who lived on the first floor and sold large quantities of Heroin. Armed with the information given to the affiants and a controlled purchase of illegal narcotics from the first floor apartment of 57 Benton St. The affiants on the date of January 6, 1992, requested and received a valid Search and Seizure Warrant for the location known as 57 Benton St. First floor apartment. See Hartford Police Case Number 93-922 for information concerning the controlled purchase."

case to that court for further proceedings according to law.

In this opinion the other justices concurred.