875 A.2d 177

**STATE of Maryland**

v.

**Robert E. GREENSTREET.**

**No. 2105, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

May 13, 2005.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Laura M. Robinson (Lessans, Praley & McCormick, on brief), Glen Burnie, for appellee.

Panel SHARER, MEREDITH, LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

RODOWSKY, J.

██ "The existence of grounds showing probable cause [for the issuance of a search warrant] must ordinarily be shown within the four corners of the affidavit." *Valdez v. State,* 300 Md. 160, 168, 476 A.2d 1162, 1166 (1984). The question presented here is whether the "four corners" rule is so restrictive that it requires the reviewing court to accept a clerical error in the affidavit as fact, particularly when the error is apparent on the face of the affidavit. As explained below, we shall hold that the four corners rule is not so restrictive.

On April 15, 2004, Officer Gregory P. Huck, an eleven year veteran of the Anne Arundel County Police Department, with six years experience in the investigation of controlled dangerous substances violations, applied to a judge of the District Court of Maryland, sitting in Anne Arundel County, for the search warrant that is the subject of this appeal. His affidavit, taken that day by the judge, reads in part as follows:

"4.) In Support of the attached application for a Search and Seizure Warrant, the affiant(s) depose(s) and say(s) that the probable cause for the Search and Seizure is as follows:

"Within the past month, your Affiant, Officer Greg Huck # 1067, received information from several citizens

complaints regarding possible CDS activity occurring at the residence of 8472 Meadow Lane, Pasadena, Anne Arundel County, Maryland. The complaints advised that there is a large amount of vehicle and foot traffic visiting the residence and that the vehicles sometimes stay for short periods and the[n] leave the area. I am aware that this type of activity is often indicative of CDS sales activity. The complaints also advised that the house often hosts disorderly parties, which disturb the neighborhood.

"On 4–14–03 Cpl. Thomas Newman # 728 and I conducted a trash seizure of 8472 Meadow Lane, Anne Arundel County, Maryland 21122. I was aware that trash collection days for the residence are Wednesday and Saturday. We successfully seized 6 bags of trash from the residence. The bags were located on the ground and in a trash can placed at the edge of the roadway in front of the residence. The trash was placed in such a manner that would indicate that it was left for the trash removal company. All the other residences in the area had their trash placed out in a similar manner that would indicate that it was abandoned property. We placed the trash in the back of a department vehicle and transported the refuse back to Eastern District Station. Upon opening the trash bags I recovered the following items from inside the trash bags.

"1. Seven (gallon size) Ziploc freezer bags containing greenish-brown plant residue.

"2. Five (sandwich size) plastic bags containing greenish-brown plant substance.

"3. Large Rival heat seal bag containing greenish-brown plant residue.

"4. Loose greenish-brown plant substance (approx. 1.55g)

"5. Cellophane wrapper containing white powder residue."

The residue in items 1 and 4 field tested positive for marijuana and the residue in item 5 field tested positive for cocaine. Also recovered were a bill and financial institution

statements addressed to the appellant, Robert E. Greenstreet (Greenstreet), at that location.[1]

Officer Huck's affidavit then stated that he had conducted surveillance at the subject premises and had observed two automobiles "consistently" parked there. One was registered to a Sharlie Greenstreet. That vehicle had been stopped "within the past 6 months" while being driven by a person identified as Robert Greenstreet.

The search warrant was executed on April 15, 2004, at 21:50 hours, and the police seized, *inter alia,* 181.2 grams of marijuana. Greenstreet was arrested and prosecuted in the Circuit Court for Anne Arundel County.

Greenstreet moved to suppress the items seized under the warrant, contending that there was no probable cause because the information on which the warrant was based was stale.[2] Appellee's argument rests entirely on the date, "4–14–03," stated in the typewritten affidavit to be the date on which the affiant and a police colleague obtained abandoned trash outside of 8472 Meadow Lane. That date is one year and one day prior to the application for the subject warrant. In preparation for responding to that argument, the State issued a subpoena for Officer Huck, but it was not served. He was unable to comply with the prosecutor's telephone request, on the day of the hearing, that he appear because he was babysitting his child at home and could not make other arrangements on short notice. At the suppression hearing the

---

1. The affidavit does not contain the dates of these documents.

2. In *Connelly v. State,* 322 Md. 719, 589 A.2d 958 (1991), the Court of Appeals explained that

 "[t]he affidavit for a search warrant on probable cause, based on information and belief, should in some manner, by averment of date or otherwise, show that the event or circumstance constituting probable cause, occurred at the time not so remote from the date of the affidavit as to render it improbable that the alleged violation of law authorizing the search was extant at the time the application for the search warrant was made."

 *Id.* at 731, 589 A.2d at 964 (inner quotes and attribution omitted).

court and the parties undertook to proceed as far as they could go. This resulted in an argument on the law.

The State took the position that the affidavit contained a typographical error in that the year in which the "trash trip" was conducted was '04 and not '03. The prosecutor told the court, "[M]y proffer straight from the Officer's mouth is that he would testify it was a typo." From that anticipated evidence, the State argued that the officer acted in good faith, so that the court should apply the good faith exception to the exclusionary rule and deny Greenstreet's motion. The prosecutor submitted that "the typo would not invalidate the warrant as it relates to the good faith exception," because the purpose of the exclusionary rule is "to punish misconduct of police officers and not typos." In reply, Greenstreet asserted that, under the four corners rule, the affiant could not testify at all, even to the extent of explaining that the date was mistakenly typed as "03." [3]

The suppression court's initial reaction to the arguments presented by counsel is reflected in the passage set forth below.

"THE COURT: But surely there must be cases on typos in search warrants.

"[DEFENSE COUNSEL]: I don't know. I don't think it's a typo because I am in possession—.

"THE COURT: No. No. But I am saying if that is the State's position there must be cases that say you can go beyond the four corners."

When the defense argued that there was nothing indicating that the affidavit contained a "typo," the court replied:

---

**3.** In addition, Greenstreet represented to the court that he had "other writings by [Officer Huck] related to this case that have the same information," *i.e.,* "the same typographical error." Greenstreet advised the court that he would argue that "Officer Huck had a reckless disregard for the truth in this matter" under *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Greenstreet made no proffer of this proof.

The circuit court ruled that Greenstreet was not entitled to a *Franks* hearing.

"Well that is what I am saying. But there has to, I am sure there are cases somewhere that talks about situations like this. And I don't know whether it's the State's burden to call a witness immediately and say oh, my goodness, Judge, I am so sorry. It's April of '04 as opposed to '03."

Later, the court said to the prosecutor, "Wait a minute. So I just want to be sure. So you could not find any scenario where the officer goes to a state's attorney and says it's a typo. Put me under oath I will swear that it's a typo. As far as the search warrant is concerned." Near the conclusion of the hearing, the court again declared, "Well I am shocked that the two of you haven't found any—," at which point defense counsel interrupted to state that he did not have any cases indicating that the affiant could testify.

The court instructed counsel to file memoranda, following the consideration of which the court would determine how the case would proceed. The original record contains a memorandum by the State, which added little, if anything, beyond the oral argument. Any memorandum filed by Greenstreet is not in the file.[4]

For the reasons stated in a written opinion, the circuit court suppressed the evidence seized under the warrant. Reasoning that the issuing court was "confined to the averments contained in the search warrant application," the court concluded that a suppression hearing "should not involve the taking of any evidence other than the submission of the warrant itself, including its application." The court held that its "consideration of the showing of probable cause should be confined solely to the affidavit itself, and the truth of the alleged grounds stated in the affidavit cannot be controverted by receiving the testimony of the accused and other witnesses."

---

4. Under Rule 3.3(a)(3) of the Maryland Rules of Professional Conduct, a lawyer is obliged only "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]" The issue in the instant matter appears to be one of first impression in Maryland.

The "only exception to the 'four corners rule,' " the court stated, was under *Franks v. Delaware, supra,* and that is applied only to an accused who, the circuit court said, "makes a threshold showing that a governmental affiant has perjured himself on a material matter."

The circuit court cited numerous decisions, but none of them involved a contention by the prosecuting authority that a search warrant affidavit contained a clerical error. Applying the confines that it had articulated, the suppression court accepted the 4–14–03 date as fact, found that the trash trip information was stale, and concluded there was no probable cause.

Invoking Maryland Code (1974, 2002 Repl.Vol.), § 12–302(c)(3) of the Courts and Judicial Proceedings Article, the State appealed. It raises the single question, "Did the trial court err in granting Greenstreet's motion to suppress physical evidence?" The State argues to us that the warrant-issuing magistrate could have concluded from the information presented within the four corners of the affidavit that the date of the trash trip was 4–14–04. Alternatively, the State argues that the good faith exception to the exclusionary rule should be applied. In this Court, Greenstreet maintains that the suppression court correctly applied the four corners rule, and that the good faith exception does not apply. In addition, he raises preservation issues which we shall address first.

## I. Preservation

 Greenstreet argues that "[t]he State intentionally and expressly conceded on several occasions that the warrant was stale and not supported by probable cause." The argument overstates the scope of the concession. What the prosecutor said was

"[t]hat on its face the date of April 14, 2003, one trash trip a year and a day before the warrant is signed, it's stale. I am not going to, I would not argue that a trash trip a year ago makes there marijuana in the house.

> "So *on that particular point* I concede that the warrant is stale. I was ready to move on to good faith which is why I needed Officer Huck, but I will, I understand counsel has some more issues with response to the warrant affidavit itself. . . . And I am not even particularly going to argue that it's freshened enough by the first paragraph [re: complaints from neighbors]. I couldn't do it."

(Emphasis added). The concession was that, if the suppression court were obliged to consider that the trash trip was made one year and one day prior to the application for the warrant, the information was stale, a conclusion not altered by the complaints received from neighbors. There was no concession by the prosecutor that the State could not demonstrate that the affidavit contained a clerical error.

█ Greenstreet also argues that the State should not be permitted to argue in this Court that the typographical error can be shown within the four corners of the affidavit, because that argument was not made in the circuit court. Appellee's position is based on Maryland Rule 8–131(a) stating, in relevant part, that "[o]rdinarily, the appellate court will not decide any other issue [than a jurisdictional one] unless it plainly appears by the record to have been raised in or decided by the trial court[.]" We have demonstrated above that the suppression court recognized the *issue* to be how it was to proceed when the State contended that the affidavit contained a typographical error. In this Court, the State merely advances an argument for the resolution of that issue that differs from the argument made by the prosecutor.

The Court of Appeals has recognized the distinction between a new issue, as the term is used in Rule 8–131(a), and a new argument, and the Court has held that Rule 8–131(a) does not preclude the latter. *See Crown Oil & Wax Co. of Delaware, Inc. v. Glen Constr. Co. of Virginia, Inc.,* 320 Md. 546, 560–63, 578 A.2d 1184, 1190–92 (1990). In this Court, the State argues that the typographical error is apparent on the face of the affidavit while, in the trial court, the prosecutor argued

that the typographical error may be considered under the good faith exception. The issue has remained the same.

In any event, even if the State has raised a new issue, Rule 8–131(a), by use of the adverb, "ordinarily," vests discretion in this Court to consider a new issue. We exercise that discretion here because neither party, at either level of court, has presented any authority directly bearing on the issue on which the circuit court urged counsel to inform it. In our view, the "issue" is one that should be resolved.

■ There is, however, one apparent concession by the prosecutor that needs to be addressed. At argument in the circuit court the prosecutor said, "I agree that on its face the Court has to accept 2003." If, by that statement, the prosecutor meant that the court was precluded from considering other information presented in the affidavit, then the concession was on a point of law. As we shall hold, *infra,* the concession was erroneous. A court is not bound by an erroneous concession of law. *See State v. Knighten,* 109 Wash.2d 896, 748 P.2d 1118 (1988) (state's concession that no probable cause existed to arrest accused was erroneous and not binding on the court). *See also Wise v. Schneider,* 205 Ala. 537, 88 So. 662, 664 (1921) (a party cannot establish the existence of a legal duty by mere admission); *Berry v. Berry,* 290 S.C. 351, 350 S.E.2d 398 (1986), *aff'd,* 294 S.C. 334, 364 S.E.2d 463 (1988) (court refused to accept husband's erroneous concession that wife's retirement plan and farm were not marital property); *Fletcher v. Eagle River Mem'l Hosp., Inc.,* 156 Wis.2d 165, 456 N.W.2d 788, 795 (1990) ("a party should not be bound by any misunderstanding or misapprehension of the law" because "legal concessions, *i.e.,* what is the applicable conclusion of law, is for the judiciary").

We turn now to the merits.

## II. The Law

In this, Part II, we shall first address the relevant law and then, in Part III, apply that law to the facts of the instant matter.

## A. General Principles

Because Greenstreet seeks to apply the federal exclusionary rule made applicable to the states by *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *cf. Chu v. Anne Arundel County*, 311 Md. 673, 537 A.2d 250 (1988) (no Maryland constitutional exclusionary rule), we look to the teachings of the Supreme Court on interpreting a search warrant affidavit. The Court has said:

> "[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

*United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

In applying the above-described standard, neither the suppression court, nor an appellate court, makes a *de novo* determination. " '[S ]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.' " *Fitzgerald v. State*, 153 Md.App. 601, 628, 837 A.2d 989, 1004 (2003), *aff'd*, 384 Md. 484, 864 A.2d 1006 (2004) (quoting, with emphasis added, *West v. State*, 137 Md.App. 314, 322, 768 A.2d 150, 154, *cert. denied*, 364 Md. 536, 774 A.2d 409 (2001)). The burden of proving that there was no substantial basis for issuing the warrant is on the accused who challenges the validity of the warrant. *Fitzgerald*, 153 Md.App. at 624–26, 837 A.2d at 1002–03.

Notes made by a District Court judge of a midnight telephone conversation with police officers who were seeking a search warrant were central to the controversy in *Valdez v. State*, 300 Md. 160, 476 A.2d 1162 (1984). The notes were "concededly difficult to decipher," and included "many crossouts, many interlineations, and several arrowed insertions." *Id.* at 168, 476 A.2d at 1166. Organization into sentences was rare, and extensive use of abbreviations was made. When the officers arrived at the judge's home to obtain a search warrant, the judge recited to them the facts in her notes, to which the officers made oath orally and then affixed their signatures. The *Valdez* Court held that the notes satisfied the affidavit requirement of the Maryland search warrant statute.

Of significance here is that the *Valdez* Court found no violation of the four corners rule when the judge testified at the suppression hearing. The Court said:

"[N]othing prohibits considering evidence that aids in deciphering what is within the four corners of the affidavit itself. In the instant case, the judge's post-warrant affidavit helps decipher her notes, which constitute the affidavit relied upon for the warrant. Further, the judge testified at the suppression hearing and was thus available to provide testimony to point out what and where facts are included in the notes. The consideration of probable cause continues to rely on a showing of facts within the four corners of the affidavit. We hold that the appellants in the instant case did have a contemporaneous pre-warrant record, consisting of the notes as an affidavit, that allowed them to challenge the probable cause determination."

*Id.* at 169, 476 A.2d at 1166.

Thus, *Valdez* appears to stand for the proposition that, depending on the circumstances, testimony may be taken, consistently with the four corners rule, to clarify or explain matter presented in the affidavit. This is in contrast with a case like *United States v. Anderson*, 453 F.2d 174 (9th Cir. 1971), where the trial court erroneously permitted the Government to supplement the affidavit by showing that, before the

warrant was issued, the affiant orally gave additional information to the Commissioner that was not included in the affidavit.

Also not without some relevance to the issue before us is Maryland Rule 4–621 which provides, in relevant part:

> "Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders."

Fed.R.Crim.P. 36 similarly provides:

> "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."

In *United States v. Matellian*, 31 F.R.D. 233 (D.Mass.1962), the court applied Rule 36 to a search warrant which had been issued and executed with a blank for the day in March 1961 when the writ was issued, thus applying "other part of the record" to a search warrant.

## B. Testimony Allowed

When the issue of a typographical error in a search warrant has been raised, some courts have looked to trial testimony or taken testimony on the issue at a motion hearing. In *Pera v. United States*, 11 F.2d 772 (9th Cir.1926), the defendant appealed from a judgment of conviction under the National Prohibition Act. Two revenuers' affidavits supported the search warrant in that case. One affidavit said that the purchases of moonshine whiskey were made on October 25, 1922, while the other affidavit placed the purchases on October 25, 1923. The court said that "[t]he affidavits on their face are amply sufficient ... except for a single defect in the first affidavit." *Id.* at 773. It appeared "from the testimony that the year 1922 was printed in the blank form, and the officer taking the affidavit neglected to change the date or year from 1922 to 1923." *Id.* This "mere clerical error" did not vitiate the warrant. *Id.*

In *State v. Chandler*, 119 N.M. 727, 895 P.2d 249 (1995), *cert. denied*, 119 N.M. 617, 894 P.2d 394 (1995), the validity of the search warrant was raised at a suppression hearing. The affidavit stated that a confidential informant, between January 5 and January 8, 1992, had witnessed a drug transaction. The affidavit was sworn to, and the warrant issued, on January 8, 1993. At the suppression hearing, the magistrate and the affiant testified that the 1992 date was a typographical error. Rejecting " 'unthinking rigidity or overly technical application' " when reviewing search warrant applications, the court held that the warrant was not defective due to the typographical error, which was an "obvious" one. *Id.* at 256 (citation omitted). *See also People v. Deveaux*, 204 Ill.App.3d 392, 149 Ill.Dec. 563, 561 N.E.2d 1259, 1264 (1990) (clerical error, literally stating warrant to have been issued ten hours after its execution, held cured by affiant's testimony and by reference to date and time noted on margin of application by prosecutor when approving it), *cert. denied*, 136 Ill.2d 547, 153 Ill.Dec. 378, 567 N.E.2d 336 (1991).

### C. Testimony Unnecessary

Other cases recognize a clerical error, as such, from a reading of the affidavit as a whole. These cases reject the notion that the four corners rule requires the issuing magistrate to be bound by that which is literally, but erroneously, stated. *State v. Rosario*, 238 Conn. 380, 680 A.2d 237 (1996), presents with clarity the analysis which we find to be persuasive. That drug prosecution involved an affidavit which referred to the officers' earlier, but unsuccessful, execution of a search warrant for a different area of the same building. The affidavit at issue was dated January 6, 1993. It recited that on January 6, 1992, the affiants had obtained information of a controlled drug purchase, described in " 'Hartford Police Case Number 93–922,' " and that they had secured a warrant. The affidavit further stated that when executing that warrant on January 6, 1992, the affiants were informed by a resident of the building that the drugs were in the basement. Based on the affidavit dated January 6, 1993, the requested warrant,

also dated January 6, 1993, was issued. The trial court suppressed on the ground that the information from the building occupant was stale, a position with which the Connecticut intermediate appellate court agreed. The trial court's analysis had been that "in determining whether timely probable cause existed to support the search warrant, it was bound by the four corners of the affidavit." *State v. Rosario*, 39 Conn.App. 550, 665 A.2d 152, 155–56 (1995).

The Supreme Court of Connecticut reversed. That court stated the question to be "whether the issuing magistrate could have reasonably inferred from the information contained in the affidavit dated January 6, 1993, that the internal dates of January 6, 1992, rather than January 6, 1993, were mere scrivener's errors that did not invalidate the search warrant." *Rosario*, 680 A.2d at 240. The court pointed out that it would be illogical to consider that a 1993 police case number referred to a controlled buy made in 1992; rather, there was an "obviously misdated reference to the first warrant[.]" *Id.* at 241.

With respect to the four corners rule, the Connecticut court, in addition to citing some of the cases to which we refer below, adopted the rule stated in 2 W. LaFave, *Search and Seizure* § 3.7(b), at 362 (3d ed.1996), where the author stated: " '[R]eference to a year other than the current year will not invalidate the warrant if the circumstances fairly indicate that the intended reference was to the current year.' " *Rosario*, 680 A.2d at 240. Because, in *Rosario*, the record clearly supported the inference "that the 1992 dates in the affidavit were scrivener's error," the magistrate's determination that probable cause existed was not undermined. *Id.* at 240.

Similarly, a search warrant was upheld where the affidavit at issue was made on February 6, 1990, but stated that affiant's conversation with a confidential informant had taken place on February 6, 1989. The affidavit also stated that the informant, within seventy-two hours preceding the application, had been inside the premises to be searched. The court held that this could only mean that the conversation took place

within the preceding seventy-two hours. *See State v. Gomez,* 107 Or.App. 698, 813 P.2d 567 (1991).

Earlier, the Court of Appeals of Oregon, in *State v. Marquardt,* 43 Or.App. 515, 603 P.2d 1198 (1979), upheld a warrant that recited that the information on which it was based had been obtained precisely one year before the date of the affidavit. There were no statements in the affidavit that conflicted with the earlier date. The court applied the following rationale:

> "Relying on the rule that probable cause must be determined from the 'four corners' of the affidavit, *i.e.,* the information properly before the magistrate, defendant contends the information was stale as a matter of law and the warrant invalid. This argument is without merit. It hardly seems likely that the affiant would wait exactly one year from the date he obtained his information and then seek a warrant at 11 p.m. Based on this circumstance, the magistrate, if he noticed the error at all, could properly conclude that it was a clerical error and that the date referred to was February 3, 1979. There is no contention that the affidavit was otherwise insufficient to establish probable cause. The error was a result of the haste of criminal investigation and to treat it in any other manner is to apply a hypertechnical standard of review disapproved by the United States Supreme Court."

*Id.* at 1199 (citing *Ventresca,* 380 U.S. at 108, 85 S.Ct. at 746).

Both the affiant and the issuing judge made errors in dates in *State v. White,* 368 So.2d 1000 (La.1979). The affidavit was dated January 12, 1978. It recited that information from a reliable confidential informant had been obtained on January 12, 1977, and that the informant had obtained the information within sixty hours of the application. The judge issued the warrant, dating it January 12, 1977. The trial court had taken testimony from the affiant, but, on appeal, the parties clashed over whether this was proper. The Supreme Court of Louisiana found it unnecessary to resolve that issue "because a commonsense reading of the affidavit makes it evident that

the affiant intended January 12, 1978 rather than January 12, 1977." *Id.* at 1002. The court pointed to that part of the affidavit stating that the informant could identify marijuana because of prior experience with the drug within the past one year.

*Arizona ex. rel. Collins v. Superior Court*, 129 Ariz. 156, 629 P.2d 992 (1981), arose on an interlocutory appeal by the State from an order suppressing photographs seized under a search warrant in a child sexual exploitation case. The affidavit for the warrant was signed on August 15, 1980. It stated that one of the victims had related to the affiant on 8–14–80 that the alleged criminal activity had occurred on or about 8–29–80. On the first page of the affidavit, however, the affiant stated that the sexual exploitation occurred on July 29, 1980. Because the August 29 date was after the date on which the affidavit was made, the Supreme Court of Arizona, in banc, concluded that the correct date was July 29 and that the trial court had abused its discretion by suppressing evidence "based on an apparent typographical error[.]" *Id.* at 995.

Likewise, where the affidavit stated that information from a confidential informant had been received within seventy-two hours of 1–6–86, but the affidavit was signed on January 2, 1986, the court, applying a "commonsense reading of the affidavit," concluded that 1–2–86 was intended as the date of information receipt and that the "obviously incorrect" date of 1–6–86 could be omitted. *People v. Lubben*, 739 P.2d 833, 836 (Colo.1987) (en banc). *See also Baker v. Commonwealth*, 204 Ky. 536, 264 S.W. 1091 (1924) (holding that, where an affidavit made 9–28–23 was based on information received 9–28–25, the affidavit on its face disclosed a mistake); *Crouse v. State*, 1996 WL 45985 (Tex.App.1996) (unpublished) (holding that typographical error on return, putting it five months after suppression hearing was held, did not invalidate warrant). *But see Stroud v. Commonwealth*, 295 Ky. 694, 175 S.W.2d 368 (1943), a decision which does not even cite the contrary holding in *Baker v. Commonwealth*, 204 Ky. 536, 264 S.W. 1091.

## III. Decision

■ It is unnecessary in the case before us to decide whether the decisions reviewed in Part II.B, in which testimony by the affiant or magistrate was permitted, represent Maryland law. There is no need to remand to the circuit court in order to take testimony on whether "4–14–03" is a typographical error in Officer Huck's affidavit. This is because, from information within the four corners of the affidavit, the District Court judge reasonably could have concluded that that date was a clerical error, and was intended to be 4–14–04.

The logical and commonsense way to read the affidavit is that the affiant is presenting the progress of the investigation in chronological order. The initial paragraph explains how the activities of Greenstreet were brought to the attention of the police. That was within the "past month," or within thirty days of 4–15–04. These complaints of neighbors induced the trash trip, mistakenly stated to be on 4–14–03. For "4–14–03" to be considered accurate in this context, one has to accept as logical that the police conducted a trash trip for some unexplained reason and then, for eleven months, sat on the highly incriminating evidence thereby obtained until neighbors complained about possible CDS activity. One must further assume that the police then took an additional thirty days to apply for a search warrant based on the year-old evidence.

More compelling of a finding of typographical error is that the affidavit was presented to the issuing judge on Thursday, 4–15–04. The affidavit states that the trash collection days for the neighborhood of 8472 Meadow Lane "are Wednesday and Saturday," indicating that the trash trip was the preceding day, 4–14–04. By use of the present tense, the affiant is describing a trash collection day that is relatively contemporaneous with the making of the affidavit, and certainly not as far in the past as one year. See *State v. Edwards*, 266 Md. 515, 518–24, 295 A.2d 465, 466–69 (1972) (discussing "present tense rule" in interpreting search warrant applications). On the other hand, if "4–14–03" must be accepted uncritically, the

information about the trash pickup days, which obviously is intended to demonstrate the abandonment of the items recovered, becomes irrelevant.

Further, it is well established that a court may take judicial notice of the day of the week on which a particular date fell. *See Shenandoah Life Ins. Co. v. Harvey,* 242 F.Supp. 680, 682 (D.Md.1965); *Line v. Line,* 119 Md. 403, 407, 86 A. 1032, 1034 (1913) (" 'Courts take judicial notice of the computation of time, as, for example, the coincidence of days of the week with days of the month, or days of the month with days of the week in that month' ") (citation omitted); *Ecker v. First Nat'l Bank,* 64 Md. 292, 293–94, 1 A. 849, 849 (1885). In 2003, the fourteenth of April was a Monday. Under the circuit court's application of the four corners rule, "[*a* ]*ll* the other residences in the area" had their trash put out for collection on a Monday, the wrong day. (Emphasis added). So slavish a reading, that is contrary to ordinary experience in a suburban area, is not required.

For the foregoing reasons, we reverse the suppression order. This conclusion makes it unnecessary for us to address the arguments concerning good faith.

**ORDER OF SUPPRESSION OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED.**

**CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY THE APPELLEE.**