ELAINE S. CHAMPAGNE *v.* JOHN F. CHAMPAGNE
(AC 22910)
(AC 24001)

Dranginis, West and DiPentima, Js.

Argued September 14—officially released November 9, 2004

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Thomas D. Colin*, for the appellant (defendant).

*Eric R. Posmantier*, with whom, on the brief, was *Andrew P. Nemiroff*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. These two appeals arise from a dissolution of marriage action. In appeal AC 22910, the defen-

dant, John F. Champagne, claims that the trial court improperly (1) modified orders pertaining to the method of sale of the parties' marital home by giving to the plaintiff, Elaine S. Champagne, the sole authority to set the listing price of the property and to accept an offer for sale, (2) required real estate taxes in arrears to be paid from the gross proceeds of the sale of the marital home even though such taxes were to be paid by the plaintiff while she was receiving pendente lite alimony from the defendant, (3) failed to order the plaintiff to return to the defendant, via the property distribution, funds she had borrowed from him during the course of the proceedings, (4) excluded testimony of the guardian ad litem regarding the breakdown of the marriage and (5) ordered the defendant, postjudgment, to execute documents in connection with the sale of the marital home. In appeal AC 24001, the defendant claims that the trial court improperly (1) modified orders pertaining to the method of sale of the marital home by giving the plaintiff sole signatory power over the listing agreement and sole power to contract for the sale of the marital home, especially in light of a pending appeal and (2) excluded evidence relating to the plaintiff's failure to abide by a court order when the plaintiff requested the court give her the sole power to contract for the sale of the marital home.

The claims from both appeals can be categorized as follows: (1) claims pertaining to the methods by which the marital home was to be sold, (2) claims objecting to the property distribution and (3) a claim that the court abused its discretion in excluding testimony regarding the breakdown of the marriage. As to appeal AC 22910, we affirm the judgment of the trial court dissolving the parties' marriage, but dismiss the claims regarding the method by which the marital home will be sold. We dismiss in full appeal AC 24001, which is

the defendant's appeal from the postjudgment orders relating to the sale of the marital home.

The following facts and procedural history are relevant to our resolution of the defendant's appeals. The parties were married on April 7, 1984. They have four children, one of whom is over the age of majority. Prior to their first child's birth in 1984, the plaintiff worked full time as a bookkeeper. She has not been employed since that time, although she was studying for a master's degree in education at the time of the dissolution. The defendant has been employed by a number of different companies and, over the years, his annual salary has varied from $400,000 to over $4,000,000.

The parties' marital home, which is a primary subject of this appeal, was constructed in 1996 and 1997. In February, 1999, the court awarded the plaintiff sole possession of the marital home. In June, 1999, on the basis of the parties' financial affidavits, the court ordered the defendant to pay $25,000 a month in alimony pendente lite to the plaintiff. The plaintiff had listed on her financial affidavit, as monthly expenses, the mortgage payment and property taxes on the marital home. The plaintiff did not keep these payments current, even prior to January, 2001, when the court reduced alimony payments to $12,000 per month. Through a court approved stipulation, on July 31, 2001, the parties agreed to list the marital home for sale with a listing price of no more than $4,200,000 and to respect any recommendations made by the broker regarding the modification of the listing price. The parties, however, were unable to abide by this agreement. Several times, the parties came before the court because they could not agree on a listing price and the house was not attracting buyers at $4,200,000. The defendant refused to lower the listing to the price suggested by the broker, and the court eventually awarded the plaintiff the sole authority to determine the listing price and to enter

into a contract for the sale of the marital home, subject to court approval. The home eventually was sold in 2003 and, following the payment of a number of debts, including the real estate taxes in arrears and the mortgage, approximately $1,600,000 remained. This amount is being held in escrow pending resolution of the defendant's appeals.

The plaintiff filed this dissolution action in March, 1998. Throughout the course of the trial, the court heard much testimony regarding the defendant's physical and verbal abuse of the plaintiff, especially in the last few years of the marriage. The court ultimately concluded that this abuse was the primary cause of the breakdown of the marriage. In the judgment of dissolution, rendered on March 14, 2002, the court awarded the plaintiff substantially more than 50 percent of the marital assets and 70 percent of the future net proceeds from the sale of the marital home. The judgment of dissolution also provided that the plaintiff was authorized to sign listing agreements and to contract for the sale of the marital home. The defendant appealed from this judgment, as well as from postjudgment orders lowering the permissible listing price of the marital home, compelling the defendant to sign papers concerning the sale of the property and, eventually, vesting the plaintiff with the sole authority to complete the sale subject to court approval, once the defendant refused to assist in the transaction.

I

On appeal, the defendant raises several claims regarding court orders pertaining to the method by which the parties' marital home would be sold. Specifically, the defendant claims that the court exceeded the scope of its authority when it awarded the plaintiff, first in the judgment of dissolution and later through postjudgment orders, the sole authority to set a listing price for the

marital home and to contract for its sale. He also claims that the court improperly ordered him to execute documents required for the sale of the home. During the pendency of these two appeals, the marital home, in fact, was sold to a third party. The sale of the marital home raises the issue of whether the defendant's claims that the court improperly entered orders respecting the sale of the marital home are moot.

"Mootness presents a circumstance wherein the issue before the court has been resolved or [has] lost its significance because of a change in the condition of affairs between the parties." (Internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 865, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). "Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . We have consistently held that we do not render advisory opinions. If there is no longer an actual controversy in which we can afford practical relief to the parties, we must dismiss the appeal." (Citations omitted; internal quotation marks omitted.) *Fiddelman* v. *Redmon*, 59 Conn. App. 481, 483, 757 A.2d 671 (2000).

In this case, the defendant is appealing from orders relating to the method by which the marital home should be sold, i.e., whether the plaintiff should have the sole authority to set the listing price and to contract for the sale of the property or whether the defendant should have an equal role in determining the sale price of the property. Since the marital home has been sold, the defendant can obtain no actual relief insofar as any orders respecting the method of sale are concerned.[1]

[1] The defendant asserts that because the plaintiff sold the marital home for $1,000,000 less than that sale price to which he would have agreed, the sale constituted waste and, therefore, his appeal as to these claims is not moot. The defendant, however, fails to explain how we could afford practical relief to him, even were we to agree with his assertion.

These claims regarding the method of sale of the marital home, therefore, are moot, and we dismiss appeal AC 24001 and those claims in appeal AC 22910 that address the method of sale of the marital home.

## II

The defendant claims that the court improperly (1) required real estate taxes in arrears to be paid from the proceeds of the sale of the marital home even though such taxes were to have been paid by the plaintiff while she was receiving pendente lite alimony from the defendant[2] and (2) failed to order the plaintiff to return to the defendant, via the property distribution, funds she had borrowed from him during the course of the proceedings.[3]

"With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation

[2] The defendant claims that the court retroactively modified a pendente lite alimony award by requiring the real estate taxes in arrears, which the plaintiff had been obligated to pay while receiving alimony from the defendant, to be paid from the gross proceeds of the sale of the marital home. In making this claim, the defendant overlooks that portion of the court's memorandum of decision clearly identifying the payment of the real estate taxes as the plaintiff's obligation and identifying the nonpayment of those taxes as a factor the court considered in the property distribution.

[3] At oral argument, the defendant stated that he would abandon this second claim since he could not find the stipulation in the record. There was, however, testimony before the court on the issue of the loan during the trial, so we will address the issue in our discussion of whether the court abused its discretion in ordering the property distribution.

marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 530–31, 752 A.2d 978 (1998).

In its memorandum of decision, the court recognized that the plaintiff should have been paying real estate taxes while she was receiving pendente lite alimony from the defendant. The court also noted that it took the plaintiff's failure to pay these taxes into consideration in the property division, despite the defendant's claim to the contrary. The court, likewise, heard testimony regarding the defendant's loan to the plaintiff prior to ordering the property division. The court could have had numerous reasons for ordering payment of the real estate taxes from the gross proceeds of the sale and then distributing the net proceeds to the parties, one of which being the need to keep the net proceeds in escrow pending resolution of these appeals. Furthermore, while the memorandum of decision does not state that the court considered the defendant's loan to the plaintiff, neither does it indicate that the court ignored this loan. At no time did the defendant request an articulation from the court on these matters. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Wallenta* v. *Moscowitz*, 81 Conn. App. 213, 230, 839 A.2d 641, cert. denied, 268 Conn. 909, 845 A.2d 414 (2004). "In the absence of an articulation, we presume that the trial court acted properly." *Zadravecz* v. *Zadravecz*, 39 Conn. App. 28, 32, 664 A.2d 303 (1995).

The court, in its memorandum of decision, notes the statutory factors it considered when ordering the final distribution, including the higher earning capacity of the defendant, the defendant's use and subsequent

depletion of marital assets to pay for the plaintiff's support, the conflict between the parties regarding the listing price of the marital home that led to the delay in its sale, and the leading causes of the breakdown of the marriage. Given the court's thorough review of the record and the history of the parties, we conclude that the court did not abuse its discretion in ordering the payment of real estate taxes in arrears from the gross proceeds of the property and in structuring the property distribution so that the plaintiff was not required to pay money directly to the defendant, whether from the proceeds of the sale of the marital home or from another source.

### III

The defendant also claims that the court abused its discretion when it excluded as irrelevant testimony by the guardian ad litem that the defendant argued related to the breakdown of the marriage. Specifically, the defendant sought to introduce evidence of the plaintiff's hostile conduct toward the defendant in the summer of 2001, almost three and one-half years after the plaintiff commenced this dissolution action. The defendant argued that this testimony was meant to counter, as evidence of the causes of the breakdown of the marriage, testimony respecting the defendant's physical and verbal abuse of the plaintiff that occurred several years before the plaintiff began this action.

"It is well settled that the trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . .

"The law defining the relevance of evidence is also well settled. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Citations omitted; internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 679–80, 830 A.2d 193 (2003).

The defendant proffered the testimony of the guardian ad litem as support for his claim that his abuse of the plaintiff was not the leading cause of the breakdown of the marriage. For the plaintiff's conduct to have been a cause of the breakdown of the marriage, it must have occurred prior to the parties' separation. We conclude that it was not an abuse of discretion for the court to preclude the defendant from introducing evidence of the plaintiff's hostility toward him, which arose more than three years after the dissolution action began.

The appeal in AC 24001 is dismissed. The appeal in AC 22910 is dismissed in part and the judgment is affirmed.

In this opinion the other judges concurred.