DAVID JACOBOWITZ *v.* VIRGINIA JACOBOWITZ
(AC 27182)

Gruendel, Harper and Foti, Js.

Argued February 7—officially released July 10, 2007

Lloyd L. Langhammer, with whom, on the brief, was Matthew J. Curtiss, for the appellants (plaintiff and third party defendants).

Ellen C. Brown, with whom, on the brief, was John C. Valliere, for the appellee (defendant).

Opinion

GRUENDEL, J. This appeal arises from a marital dissolution action in which the trial court found that the transfer of certain properties by the plaintiff, David Jacobowitz, to his mother, Gloria Sanschagrin, and his sister, Karen J. Aravich, and by them to the Jacobowitz Mobile Home Park, Inc. (mobile home park), constituted a fraudulent conveyance that improperly removed the properties from the marital estate. The plaintiff and the third party defendants, Sanschagrin, Aravich and the mobile home park collectively, appeal from the judgment of the trial court, claiming that it improperly (1) set aside a mortgage when the issue had not been raised by the defendant, Virginia Jacobowitz, (2) found a fraudulent conveyance and (3) failed to dismiss the defendant's third party complaint.[1] We affirm the judgment of the trial court.

[1] Because it has been briefed inadequately, we decline to address the plaintiff's and third party defendants' final claim. Their appellate brief states: "The term 'transfer' is defined by General Statutes § 52-552b (12) to mean 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, or disposing of or parting with an asset or interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.'" Their rather sparse argument merely recites definitions pursuant to § 52-552b of the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq., to conclude that "a transfer cannot be considered fraudulent if, at the time of the transfer, the transferred property is encumbered by valid liens exceeding the property's value because the property would no longer be considered an asset under General Statutes § 52-552b (2), and only assets may be transferred fraudulently." Their sole citation to Dietter v. Dietter, 54 Conn. App. 481, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999), for this proposition is inapposite. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief

The following facts and procedural history are relevant to the issues on appeal. The defendant began living with the plaintiff in 1986 in Montville. On September 14, 1987, the plaintiff executed a promissory note to Sanschagrin, promising to repay the sum of $500,000, pursuant to a schedule as recorded on the land records.[2] In order to secure the money, the plaintiff mortgaged properties located on Fellows Road and Route 163. The money was reputedly for the plaintiff's trucking company, which he operated as the sole proprietor from 1979 to 2000.

The plaintiff and the defendant were married on August 11, 1990, and in December, 1999, the defendant originally filed for divorce from the plaintiff. On January 12, 2000, after having paid Sanschagrin $66,000 pursuant to the agreement, the plaintiff executed a blanket mortgage to her, in which he mortgaged the properties located on Fellows Road and Route 163, as well as the marital properties on Lathrop Road and Cottage Road, to secure the promissory note that he had executed in 1987.[3] The mortgage was recorded on the land

---

the issue properly." (Internal quotation marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 452, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006).

[2] The payment schedule provided that the money was to be repaid to Sanschagrin "at the rate of $500 monthly commencing January 1, 1988, until January 1, 2000, totaling $66,000. On or before January 1, 2000, [the plaintiff] will pay his mother $100,000. Thereafter, on the first of January of each year until January 1, 2005, he will pay $50,000, and on January 1, 2006, it will balloon and he will pay her the sum of $84,000."

[3] In its memorandum of decision, the court documented the acquisitions of the four properties: "On December 2, 1986, Leonard Jacobowitz deeded to the plaintiff real property known as the Route 163 in said town of Montville as a gift, as no consideration was paid for same.

"On December 13, 1988, Sarah Jacobowitz deeded to the plaintiff real property known as 163-164 Fellows Road located in Montville . . . as a gift, as no consideration was paid for same.

"In April, 1991, after their marriage, the parties purchased 38 Cottage Road in said town of Montville for $200,000. [The] [p]laintiff testified that he paid $100,000 on said property from money he had saved from his employment. The balance of the purchase price was paid by a mortgage on said property.

records.[4] The dissolution action was dismissed by the court in April, 2000, as the defendant had not pursued the action due to an attempted reconciliation. On May 31, 2000, the plaintiff transferred the properties on Fellows Road and Route 163 to Sanschagrin.

On December 22, 2000, the plaintiff convinced the defendant to sign the marital properties on Lathrop Road and Cottage Road over to him,[5] and then drove her to his attorney's office in New London in an attempt to have her sign divorce papers.[6] The next day, the plaintiff transferred the properties to Aravich. The plaintiff testified that the transfers were made because of debt he owed to his mother and sister. No appraisals were obtained prior to the transfers, and the record reveals that the properties were worth more than the debt owed. On October 30, 2001, Sanschagrin and Aravich transferred the Lathrop Road, Fellows Road and Route 163 properties to the mobile home park,[7] a

"On July 31, 1998, the parties purchased the real property known as Lathrop Road in said town of Montville for $220,000. They paid $40,000 down and gave a purchase money mortgage of $180,000 to the seller, which mortgage remains unpaid."

[4] The court noted that "at the time the mortgage was executed, the $500,000 allegedly owed to Sanschagrin was not decreased by the $66,000 the plaintiff claimed he had paid Sanschagrin prior to January, 2000."

[5] The defendant testified that the plaintiff "picked me up at work and he told me we were going to the bank, and I didn't know at that time we were signing papers. And he was telling me that we have to sign papers, and we have to do it today or we're going to lose our home; that he said he was going bankrupt and—and that he had a lot of bills and more likely told me that if I didn't sign the papers, he wasn't going to stay with me because we're going to lose our home." When asked whether she had signed the papers, she replied: "I wanted to believe what he said, so, yes, I did sign the papers."

[6] Although the defendant signed her copy of the divorce papers, she took the signed document with her and did not sign any additional copies. She introduced her copy as an exhibit for trial.

[7] The Cottage Road property, which included the marital home, subsequently was sold to a bona fide good faith purchaser in 2004 and is not at issue in this appeal. See *Molitor* v. *Molitor*, 184 Conn. 530, 535–36, 440 A.2d 215 (1981) ("a conveyance may judicially be declared void and set aside as against any person except a purchaser for fair consideration without

Nevada corporation of which they were the only stock-holders and for which the plaintiff was the sole employee.

The plaintiff filed for divorce from the defendant on December 11, 2002, and the defendant filed an answer on January 9, 2003, in which she agreed with the plaintiff that the marriage had "broken down irretrievably with no hope of reconciliation." On March 19, 2004, she filed a third party complaint against Sanschagrin, Aravich and the mobile home park in which she claimed that the conveyances, both from the plaintiff to Sanschagrin and Aravich, and from Sanschagrin and Aravich to the mobile home park, removed or were executed with the intent to remove property from the marital estate, which otherwise would have been subject to equitable distribution. During the pending dissolution proceeding, the plaintiff filed a financial affidavit dated August 2, 2005, in which he did not list any of the properties as an asset.

A six day trial to the court commenced on August 2, 2005, and concluded on November 17, 2005. By memorandum of decision filed November 18, 2005, the court dissolved the marriage, finding that it had "broken down irretrievably without any hope for reconciliation" and that the parties were equally at fault for the breakdown. The court continued: "Before setting forth any orders pursuant to the provisions of the pertinent Connecticut statutes, the court must first decide the defendant's claim of fraudulent transfer by the plaintiff of real property owned by him solely and of real property owned by the plaintiff and [the] defendant during the marriage of the parties. Such a determination is necessary to determine the marital estate." After a thorough analysis

knowledge of the fraud at the time of purchase, if the conveyance was fraudulent"); see also General Statutes § 52-552i (a) ("[a] transfer or obligation is not voidable under subdivision [1] of subsection [a] of section 52-552e against a person who took in good faith and for a reasonably equivalent value").

of the testimony and evidence, the court found that all of the conveyances were made "without any consideration and . . . with the intent to remove [property] from the parties' marital estate that otherwise would have been subject to the claims of equitable distribution." The court ordered the plaintiff to pay a sum of money to the defendant within ninety days or the conveyances would be set aside and the defendant would receive one half of the interest in the properties.[8] This appeal followed.

## I

The plaintiff and the third party defendants first claim that the court improperly set aside the mortgage that the plaintiff had executed to Sanschagrin. Specifically, they claim that the defendant failed to plead that the mortgage should be set aside, and the court's action was therefore improper. Although we agree with the parties that "the right of a plaintiff to recover is limited by the allegations of the complaint . . . and any judgment should conform to the pleadings, the issues and the prayers for relief"; (internal quotation marks omitted) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002); we disagree with the plaintiff's and the third party defendants' conclusion.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review

---

[8] The court also ordered payment of alimony to the defendant and child support for the parties' minor child.

of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 667–68, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005).

The court stated in its memorandum of decision that "the circumstances surrounding the agreement, its time of execution and the terms of the agreement make the validity of the agreement suspect. Therefore, the court finds that the mortgage was not valid as a claim above the defendant's right to share in the marital assets of the parties." The court is in the position to hear the testimony and assess the credibility of the parties. Although the plaintiff's blanket mortgage to his mother indisputably was documented in the land records, the court clearly stated that it found the validity of the agreement "suspect" and the plaintiff's testimony not credible.

We do not view the court's action as intending to set aside the mortgage. On the contrary, the court simply determined that it would not be considered in the equitable distribution of the marital assets, which was well within the court's discretion. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that

[t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 844, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). The plaintiff's and the third party defendants' claim thus fails.

## II

The plaintiff and the third party defendants next claim that the court's finding of a fraudulent conveyance was improper. Specifically, they argue that the court used the incorrect standard of law to invalidate the conveyances from Sanschagrin and Aravich to the mobile home park and that it used the incorrect standard for determining whether those conveyances were fraudulent. We disagree on both counts.

"The question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier. . . . We will not disturb the trial court's factual findings unless they are clearly erroneous and unsupported by the record." (Internal quotation marks omitted.) *National Loan Investors, L.P.* v. *World Properties, LLC*, 79 Conn. App. 725, 731, 830 A.2d 1178 (2003), cert. denied, 267 Conn. 910, 840 A.2d 1173 (2004).

"The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." *Tyers* v. *Coma*, 214 Conn. 8, 11, 570 A.2d 186 (1990). "If the fraudulent conveyance claim is joined with a marriage dissolution action . . . the court is not concerned with whether the transfer renders the transferor

insolvent or unable to meet his or her obligations. In such a situation, the issue is whether the conveyance removed property from the marital estate that would otherwise have been subject to claims of equitable distribution." *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 42, 623 A.2d 496 (1993).

The plaintiff and the third party defendants contend that the standard used in *Tessitore* is solely applicable to the transfers from the plaintiff to Sanschagrin and Aravich and not to the transfers from Sanschagrin and Aravich to the mobile home park. They claim that because the third party defendants are not parties to the dissolution action, the court instead should have applied the two-pronged test annunciated in *Tyers*. Further, they claim that the defendant did not allege facts to prove that the transfers between the third party defendants were made "to cause insolvency." The plaintiff and the third party defendants thus conclude that only the second prong in *Tyers* is applicable, and the defendant must prove by clear and convincing evidence "actual intent to defraud."

The defendant's third party complaint expressly stated that the conveyances of the three properties removed, or were made with the intent to remove, property from the marital estate, which otherwise would have been subject to equitable distribution. The court therefore did not abuse its discretion in joining the claim of fraudulent conveyances to the marital dissolution action, and it properly applied the *Tessitore* standard. There was ample evidence available for the court to conclude that the mobile home park was not a good faith purchaser; it was a closely held corporation, of which Sanschagrin and Aravich were the only shareholders and for which the plaintiff was the sole employee. Additionally, there was no consideration for the transfers.

"A fraudulent conveyance must be proven by clear and convincing evidence . . . ." (Citation omitted.) *Tessitore* v. *Tessitore*, supra, 31 Conn. App. 43; see also *Farrell* v. *Farrell*, 36 Conn. App. 305, 309, 650 A.2d 608 (1994). The court explicitly found, "by clear and convincing evidence, that the plaintiff, with the agreement and, or, acquiescence of Sanschagrin and Aravich, fraudulently conveyed all of the aforesaid referred to real properties to Sanschagrin and Aravich and subsequently by them to the [mobile home park]; that said conveyances were without any consideration and made with the intent to remove from the parties' marital estate [property] that would otherwise have been subject to the claims of equitable distribution."[9] Accordingly, the plaintiff's and the third party defendants' claim that the court used an incorrect standard in relation to the third party defendants fails.

The plaintiff also argues that the court misapplied the case law because the transfers were made *before* the dissolution action. He cites *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990), for the proposition that "[t]he proper question in this context is whether, *after* the institution of a dissolution action, the conveyance removed property from the marital estate that would otherwise have been subject to claims of equitable distribution." (Emphasis added.) Id., 308. We disagree with the plaintiff's assertion that *Gaudio* "establishes that this standard *only* applies to conveyances that occurred

---

[9] We note that the result of the present case is distinguishable from that in *Tessitore*, in which this court held that "the trial court's corrected memorandum of decision fails to state the standard of proof that it used. Under such circumstances, we assume that the usual civil preponderance of the evidence standard was used. . . . [B]ecause we are not satisfied that the more exacting, clear and convincing standard was used, we reverse the trial court's finding and order a new trial." (Citations omitted.) *Tessitore* v. *Tessitore*, supra, 31 Conn. App. 43.

after the institution of the dissolution action." (Emphasis added.) On the contrary, we conclude that our Supreme Court's reasoning in *Molitor* v. *Molitor*, 184 Conn. 530, 440 A.2d 215 (1981), better reflects the appropriate policy regarding fraudulent conveyances in marital dissolution actions. "While neither marriage nor an action for dissolution serves, in and of itself, to transfer an interest in property from one spouse to another . . . the institution of judicial proceedings serves, at least between the parties, to preserve the status quo from impairment by fraud. A transfer made *after notice* of an actual or imminent action seeking alimony or support may be found fraudulent and set aside." (Emphasis added.) Id., 534.

As the court in the present case found, the defendant originally filed for divorce in December, 1999, and the plaintiff executed the blanket mortgage to his mother the following month. Although the parties reconciled, the court did not find credible the plaintiff's explanation of the subsequent transfers, and there was ample evidence to support its conclusion that "the circumstances surrounding the agreement, its time of execution and the terms of the agreement make the validity of the agreement suspect." Despite the plaintiff's assertion during oral argument that discord in marriage is not uncommon, we conclude that he had adequate notice of a pending dissolution action when he made the transfers. The fact that the plaintiff preempted the defendant by filing the second dissolution action himself does not absolve the transfers from being declared fraudulent by the court. Accordingly, the plaintiff's and the third party defendants' claim fails.

### III

The plaintiff and the third party defendants next claim that the court's denial of the third party defendants' motion to dismiss was improper. We are unpersuaded.

Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to establish a prima facie case. . . ." "Whether the plaintiff has established a prima facie case is a question of law, over which our review is plenary." *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 456, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002). "The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846–47, 863 A.2d 735 (2005).

We reiterate that the third party complaint of the defendant, who was the plaintiff in the third party action, alleged that the conveyances of the three properties from Sanschagrin and Aravich to the mobile home park removed, or were made with the intent to remove, property from the marital estate, which otherwise

would have been subject to equitable distribution. Ample testimony and evidence was presented that the conveyances occurred during a period of marital discord and that the consideration given for them was inadequate. There was sufficient testimony given for the court to conclude that the defendant, as a third party plaintiff, had made out a prima facie case, and the court properly denied the third party defendants' motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.