## BERNADETTA KACZYNSKI *v.* DARIUSZ KACZYNSKI
### (AC 28077)

McLachlan, Lavine and West, Js.

Argued March 12—officially released July 29, 2008

*William F. Gallagher*, with whom was *Jacqueline F. Barbara*, for the appellant (defendant).

*Richard C. Stewart*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. The defendant, Dariusz Kaczynski, appeals from the judgment of the trial court dissolving

his marriage to the plaintiff, Bernadetta Kaczynski. On appeal, the defendant claims that the court improperly (1) found that the evidence was replete with fraudulent deeds without applying the required standard of proof to these findings, (2) made an alimony award that was not supported by evidence and the applicable law and (3) entered financial orders that unreasonably and disproportionately favor the plaintiff. While it would appear, without deciding the issue, that the financial orders are within the broad discretion appropriately exercisable by the court in dissolution of marriage actions, because the court did not enunciate the required standard of proof, we reverse the judgment of the trial court.[1]

The record discloses the following relevant information. The plaintiff and the defendant, who were married on July 17, 1993, have three minor children: a son born on February 15, 1996, and twin daughters born on March 11, 1999. At the time of the marital dissolution hearing in June, 2006, the plaintiff was thirty-nine years of age and the defendant was forty-two. The plaintiff was born and educated in Poland. She had attended college in Warsaw, Poland, for four years, and had attended Housatonic Community College in Bridgeport. She worked as a housecleaner until her first child was born. At the time of the dissolution hearing she had been working, full-time, as an accounting assistant for one year, earning $428 per week.

The defendant, at the time of the dissolution hearing, had worked for Sikorsky Aircraft Corporation for nineteen years, earning a salary of about $60,000 (gross) a year. In its memorandum of decision, the court found that the defendant was very skillful and had obtained a significant amount of income from self-employment,

---

[1] Because our resolution of the first issue requires us to order a new trial, we do not address the other issues raised by the defendant.

such as lawn maintenance and carpentry. The defendant had been hospitalized for depression and at the time of the dissolution hearing was being treated with medication and therapy.

The plaintiff filed an amended complaint on May 9, 2006, seeking dissolution of the marriage and adding causes of action alleging that the defendant had engaged in fraudulent transfers of marital property with members of his family; however, she did not seek to add any additional parties as defendants. On July 3, 2006, the court rendered judgment dissolving the parties' marriage on the ground of irretrievable breakdown, finding that the defendant caused the breakdown of the marriage. Although the court stated that the "evidence is replete with fraudulent transfers, false tax returns and property deeds devoid of truth," the court did not order a remedy to correct these fraudulent acts. Instead, the court issued several orders. The court ordered the defendant to pay child support to the plaintiff in the amount of $237 per week and to pay the plaintiff alimony in the amount of $250 per week for seven years. Additionally, the court ordered the defendant to provide the current insurance coverage for the children and to pay 60 percent of the children's unreimbursed medical and dental expenses.[2]

With respect to the parties' assets, the court found that the defendant "in complicity with his sisters sought to take financial advantage of the [plaintiff] by deceitfully clever means." The court considered the value of the assets that the defendant transferred to his sisters "as part of the marital assets" in making its financial orders but did not create a constructive trust for these assets. The court ordered the defendant to transfer to

[2] The court ordered that the defendant maintain a term life insurance policy in an amount not less than $150,000, naming the plaintiff as his beneficiary until his alimony and child support obligations terminate.

the plaintiff by quitclaim deed the jointly owned residence located at 31 Winfield Drive in Shelton.

The court also issued orders concerning the parties' personal property. Those orders included a provision that the defendant's pension plan and 401 (k) plan be divided equally. The court distributed the parties' automobiles. The defendant was to have the 1987 Ford pickup truck, the 1992 BMW and the 2006 Infiniti.[3] The plaintiff was awarded the 1999 Honda. The court ordered that the plaintiff retain the household furnishings used by the plaintiff and the children and that the defendant retain any furniture that he had recently purchased. Additionally, the court ordered the defendant to contribute $25,000 to the plaintiff for attorney's fees.

On July 12, 2006, the defendant filed a motion to reargue, which the court subsequently granted. On September 14, 2006, the court modified its July 3, 2006 judgment. The court ordered that the plaintiff pay 58 percent of the children's unreimbursed medical and dental expenses and that the defendant pay 42 percent. The court also ordered that instead of the defendant's maintaining a $150,000 life insurance policy, he must maintain at least $81,000 in life insurance. The court vacated the household furnishings award and determined that the distribution of the furnishings would be arbitrated by attorney Stanley Goldstein. Last, the court stated that "the court's orders in this case would be

---

[3] Furthermore, the court ordered: "The [defendant] is the owner of the 2006 Infiniti [automobile] free and clear of all encumbrances. Within thirty (30) days of the judgment, the [defendant] shall either sell the Infiniti or encumber it with a loan of $40,000, and pay the $40,000 to [the plaintiff] to enable her to purchase an appropriate vehicle for her and the children's use. The [plaintiff] shall transfer possession of the [Honda] Odyssey automobile to the [defendant] upon receipt of the $40,000 from [the defendant]. The [defendant] shall retain the 1987 Ford F150 and the 1992 BMW motor vehicles. The parties will each be responsible for all expenses, insurance, repairs and costs associated with their respective automobiles."

clearly undermined absent the award of attorney fees. Failure to award at least $25,000 in attorney fees will result in other necessary financial awards being affected." This appeal followed.

At the outset, we note that "[t]he issues involving financial orders are entirely interwoven. The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . Furthermore, trial courts are endowed with broad discretion to distribute property in connection with a dissolution of marriage." (Citation omitted; internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 354, 880 A.2d 872 (2005).

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 667–68, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). Although this is a deferential standard, there are cases in which the trial court abused its broad discretion by misapplying the law. See *Ehrenk-*

*ranz* v. *Ehrenkranz*, 2 Conn. App. 416, 420, 479 A.2d 826 (1984).

The defendant first claims that the court improperly found that the evidence was replete with fraudulent transfers, fraudulent tax returns and fraudulent deeds under circumstances where the court failed to articulate the applicable standard of proof for finding fraud. Particularly, the defendant argues that the court did not explicitly state or otherwise implicitly indicate whether the plaintiff had established by clear and convincing evidence that he had engaged in fraudulent transfers of property. According to the defendant, because the court did not articulate the standard of proof it used in finding fraudulent transfers, the court should not have considered those transfers in its valuation of the marital property.[4]

"The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated.

---

[4] The plaintiff asserted, in her amended complaint, that the defendant partook in transfers of property "without substantial consideration and removed the property from the marital estate that would otherwise have been subject to the claims of equitable distribution." In her prayer for relief, she cited the fraudulent conveyance statute, General Statutes § 52-552, requesting that the court "consider as part of the marital estate, the properties and mon[eys] conveyed or transferred by the defendant without consideration whether or not the [c]ourt sets aside these conveyances as fraudulent . . . ." General Statutes § 52-552, however, was repealed by Public Acts 1991, No. 91-297, and the legislature has enacted General Statutes § 52-552a, the Uniform Fraudulent Transfer Act. We conclude that although the plaintiff incorrectly cited this act in her complaint, the complaint gave reasonable notice of the claim she was making. See generally *Gaudino* v. *East Hartford*, 87 Conn. App. 353, 359 n.3, 865 A.2d 470 (2005) (stating: "They were on notice that the defendant believed something was missing from the complaint. A review of the complaint and the governing law would have revealed the use of the incorrect statute.").

. . . If the fraudulent conveyance claim is joined with a marriage dissolution action . . . the court is not concerned with whether the transfer renders the transferor insolvent or unable to meet his or her obligations. In such a situation, the issue is whether the conveyance removed property from the marital estate that would otherwise have been subject to claims of equitable distribution." (Citation omitted; internal quotation marks omitted.) *Jacobowitz* v. *Jacobowitz*, 102 Conn. App. 332, 340–41, 925 A.2d 424 (2007).

"A fraudulent conveyance must be proven by clear and convincing evidence . . . and whether the trial court has applied a lesser standard of proof is reviewable on appeal." (Internal quotation marks omitted.) *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 43, 623 A.2d 496 (1993). In cases in which the trial court fails to state the standard of proof that it used, we assume that the usual civil preponderance of the evidence standard was used. Id. In cases in which the trial court has failed to state explicitly the standard of proof but the memorandum of decision implies that the court applied the proper standard of proof, we need not reverse the decision. *Patrocinio* v. *Yalanis*, 4 Conn. App. 33, 36, 492 A.2d 215 (1985). With this in mind, we address the court's consideration of the fraudulent transfers in fashioning its financial and property awards.

In its memorandum of decision, the court stated: "After six days of trial, the court is satisfied that the [defendant] in complicity with his sisters sought to take financial advantage of the [plaintiff] by deceitfully clever means. Unfortunately, the [defendant] has artfully disguised his assets so that a substantial portion of his equitable estate has been reduced." The plaintiff did not join the defendant's "sisters or his parents [as] parties to this action, so this judgment may *appear lopsided*, but a close look at [the defendant's] machinations *will make the result transparent*." (Emphasis

added.) Accordingly, the court detailed the "nefarious dealings" of the defendant. The court found that the defendant's mother conveyed a one-half interest in her home located at 95 Park Avenue in Shelton to the defendant and her two daughters. The defendant conveyed his interest in this property to his two sisters when his marriage to the plaintiff disintegrated.

With regard to two other substantial assets, the court reached a similar conclusion. The court found that title to a piece of property located at 1351 Huntington Turnpike in Trumbull was also suspect. The defendant had purchased the property eight years earlier in his name. Before the dissolution action, he transferred half of the property to his niece. Subsequently, the property was sold for $349,000. Although the defendant claimed that it was not his property, the court was not convinced by his claim. Finally, the court took notice of a $163,000 withdrawal from the parties' joint savings account. The defendant gave $100,000 to his sister and used $52,305.94 to purchase the Infinity automobile.[5]

After reciting its findings, the court stated that the "evidence is replete with fraudulent transfers, false tax returns and property deeds that are devoid of truth." Yet, the court did not create a constructive trust or order that the property or assets at issue be reconveyed to the plaintiff. See *Patrocinio* v. *Yalanis*, supra, 4 Conn. App. 33; cf. *Dietter* v. *Dietter*, 54 Conn. App. 481, 485–86, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999). Rather, the court noted the "nefarious dealings" of the defendant and his family and stated that the "judgment may appear lopsided, but a close look at the [defendant's] machinations will make the result transparent."

---

[5] The court found that the defendant's assertion that the $100,000 he withdrew was repayment for a seventeen year old loan to his sister was not credible.

The defendant argues that because the court fashioned its financial awards and property awards by taking into consideration the claimed "fraudulent conduct" of the defendant, the court abused its discretion. The defendant argues that although the court found that the transfers of the property were fraudulent, there is nothing in the record to support the conclusion that the court applied the proper standard of proof. As the defendant argues in his brief, "[a]t no point in either its original memorandum of decision, its oral comments at the conclusion of arguments on the defendant's post-trial motion or in its supplemental memorandum of decision did the trial court state that it had found fraud proven by clear and convincing evidence."

In opposition, the plaintiff argues that there was no need to prove fraud because the court had discretion to convey and transfer the properties and moneys of the defendant.[6] Moreover, the plaintiff carefully discusses each of the "nefarious" transactions, arguing that the clear and convincing standard does not apply. For example, the plaintiff claims that the $100,000 check that the defendant made out to his sister did not require the court to apply the higher standard of proof; rather, the court had to determine the credibility of the defendant and his sisters. She discussed each suspect transaction in turn, arguing that the court did not need to apply the higher clear and convincing standard of proof.

---

[6] It should be noted that in a typical dissolution of marriage case, the court has very broad discretion when ordering its awards. General Statutes § 46b-81 (a) provides in relevant part that the court "[a]t the time of entering a decree annulling or dissolving a marriage or for legal separation . . . may assign to either the husband or wife all or any part of the estate of the other. . . ." Moreover, "[a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Finan* v. *Finan*, 100 Conn. App. 297, 300, 918 A.2d 910 (2007), rev'd on other grounds, 287 Conn. 491, 949 A.2d 468 (2008). In the present case, the court properly applied the statutory criteria.

The dissent seems persuaded by this argument. Yet, neither the dissent nor the plaintiff provides us with case law, nor can we find any, that supports this argument.

Although we agree that the court's findings are amply supported by the evidence, the court did not indicate what burden of proof it applied when it concluded that the defendant had engaged in fraudulent transfers. The court had to state explicitly, or implicitly, in its decision that the finding of a fraudulent conveyance was made by clear and convincing evidence. See *Tessitore* v. *Tessitore*, supra, 31 Conn. App. 43. The court did not articulate that it applied this standard, nor did it implicitly indicate that it was applying a standard higher than that of a mere preponderance of the evidence. Cf. *Patrocinio* v. *Yalanis*, supra, 4 Conn. App. 36. Thus, the court's finding of fraud cannot stand. Although the dissent construes the language of the court during the hearing on the motion to reargue to indicate implicitly that the court had "utilized the clear and convincing standard," our reading of the full transcript of the hearing on that motion leaves us with the impression that the court equivocated and elected not to make the finding that it found fraud by clear and convincing evidence. Reading pages thirty-five through thirty-seven of the transcript does not leave us with the impression that the court found the higher standard by implication.[7] Our case

---

[7] The transcript contained the following colloquy:

"The Court: But if they don't prove fraud—they may prove it, they may prove—they may not have to.

"[The Defendant's Counsel]: Why? That was the basis of the court's decision.

"The Court: Well, that's why some appellate court may well say that they didn't have to. Okay.

"[The Defendant's Counsel]: The basis of the court's decision is the reason why we're giving the plaintiff 98 percent—

"The Court: Court may well say it would be in the—the court may well say that the alternative is just as satisfactory.

\* \* \*

"The Court: Did he get something from his sisters?

law makes it clear that a finding of fraud by clear and convincing evidence can be made implicitly and need not be made by express language. That finding, however, cannot be made from the context of the opinion or hearing, but must be made by actual words. See, e.g., *Patrocinio* v. *Yalanis*, supra, 36 (court, in its decision on claims of fraudulent conveyance stated that "any claim of fraud requires a very high standard of proof and that this standard was higher than a mere preponderance of the evidence" [internal quotation marks omitted]).

Our Supreme Court has held that it is proper for a trial court to consider and to include the value of property that has been conveyed fraudulently when it determines financial and property awards after there is first a finding of fraud. *Watson* v. *Watson*, 221 Conn. 698, 607 A.2d 383 (1992). In *Watson*, the plaintiff claimed that the value of the family home should have been included in the marital estate because the defendant fraudulently had transferred the property to his children. Id., 708. The trial court found by clear and convincing evidence that the property had been transferred

"[The Defendant's Counsel]: He didn't get anything, Your Honor, from his sisters. Even if—even if he did—

"The Court: Come on, [counsel].

"[The Defendant's Counsel]: Your Honor, just let me explain. The reason why this case took six days, okay, is because of speculation, conjecture and maybes. And I recall specifically the court's comments that it doesn't see it, let's move this case along. That's why this case took six days. Okay. Every allegation that the plaintiff brought up, every maybe, maybe there's an account here, you got to prove it, there are no maybes. That's why this case took six days.

"But fraud is a very serious allegation; that's why it's clear and convincing. You've got to prove it. Now, after you prove it, do you bring those people in or do you redistribute the assets differently. But you've got to prove it first. And if the facts, Your Honor, don't support it, it's clearly erroneous. That's what *Greco* [v. *Greco*, supra, 275 Conn. 359–60] found—clearly erroneous, abuse [of] discretion and reversed all financial orders. That's what we're left with in this case. Thank you.

"The Court: The court's got a job to do, and that's how I saw it."

without substantial consideration and with fraudulent intent, which satisfied the elements under General Statutes (Rev. to 1987) § 52-552. Thus, there was a finding of fraud. The trial court, however, found that the plaintiff did not satisfy the tests for setting aside a conveyance. Therefore, the court did not consider the value of the property when it fashioned its awards. Id., 708–709. Our Supreme Court agreed with the plaintiff and determined that the value of the family home should have been included in the marital assets.[8] Id., 709.

In *Miller* v. *Miller*, 22 Conn. App. 310, 577 A.2d 297 (1990), the defendant and his brother each owned a one-half interest in two separate corporations along with the realty where the stores owned by the corporations were located. The defendant was involved in a dissolution of marriage action when he transferred his interest in each of the properties to his brother without consideration. After the trial court concluded that the interests had been conveyed fraudulently, it set aside only one of the transfers, yet ordered that the defendant pay to the plaintiff the amount of his interest in the second property, which had not been set aside. The defendant appealed, and this court upheld the trial court's remedy. Id., 315.

In *Greco* v. *Greco*, supra, 275 Conn. 348, our Supreme Court affirmed this court's judgment that the trial court abused its discretion when it distributed marital property disproportionately. In *Greco*, the trial court found

---

[8] Our Supreme Court stated: "[T]he trial court in a dissolution action may properly consider as part of the marital estate property that has been fraudulently transferred even though for some reason the trial court has chosen not to set aside the transfer. Such an outcome prevents a party to a dissolution action from inequitably benefiting from his fraudulent transfer of real property by reducing the assets that would otherwise be included in the marital estate and available for assignment pursuant to General Statutes § 46b-81." *Watson* v. *Watson*, supra, 221 Conn. 709.

that the plaintiff had *not proved the existence of a fraud-*
*ulent conveyance,* yet, ordered a vastly disproportion-
ate property distribution. Id. This court concluded that
this was an abuse of the trial court's discretion. Id. The
plaintiff appealed to our Supreme Court, claiming that
the trial court's disproportionate award was justified
by relying on allegations of fraud. Id., 357. Our Supreme
Court rejected the plaintiff's claim, stating that "[case
law] does not support her claim that the court could
properly consider the value of the transferred stock
and real estate as part of the marital [property], in light
of the fact that the trial court explicitly found that the
conveyance at issue . . . was *not* fraudulent." (Empha-
sis in original; internal quotation marks omitted.) Id.,
358–59.

Here, the defendant argues, the court improperly con-
sidered the value of the allegedly fraudulently trans-
ferred property because it did not explicitly or implicitly
find fraud by clear and convincing evidence. We agree
with the defendant. In the cases that have permitted a
trial court to consider the value of property that has
been fraudulently transferred even if the transfer has
not been set aside, the court first found a fraudulent
transfer by the proper standard of proof. See id., 348;
*Watson* v. *Watson,* supra, 221 Conn. 706; *Miller* v. *Miller,*
supra, 22 Conn. App. 312–13.

Because the court did not articulate the appropriate
standard for a fraudulent transfer, the court could not
properly have considered the value of these allegedly
fraudulent transfers when it fashioned its financial and
property awards.

In a dissolution of marriage case, the judgment must
be viewed as a carefully crafted mosaic, each element
of which may be dependent on the other. See *Ehrenk-*
*ranz* v. *Ehrenkranz,* supra, 2 Conn. App. 424. Therefore,
we conclude that the court abused its discretion by

considering the value of the property and money involved in the allegedly fraudulent transfers when it fashioned its award. The case must be remanded for a new hearing.[9]

The judgment is reversed and the case is remanded for a new trial.

In this opinion WEST, J., concurred.

LAVINE, J., dissenting. I respectfully dissent from the majority opinion and would affirm the judgment of the trial court. Although the trial court in its memorandum of decision did not articulate explicitly the standard of proof it applied to the claims of fraudulent conveyance alleged by the plaintiff, Bernadetta Kaczynski, it did so in the context of the hearing on the motion to reargue filed by the defendant, Dariusz Kaczynski. Because the colloquy between the court and counsel for the defendant, Jacqueline F. Barbara, makes it clear implicitly that the court applied the "clear and convincing standard," and that Barbara understood that to be the prevailing standard, I would affirm the judgment of the trial court.

Following a six day trial, the court rendered its judgment on July 3, 2006. On July 12, 2006, the defendant filed a motion to reargue. Section eight of the motion to reargue addressed the court's order regarding the marital home at 31 Winfield Drive, Shelton, and is six pages in length.[1] The first paragraph of section eight

---

[9] We are aware of cases in which if the dissolution of the marriage itself is not challenged on appeal, that portion of the judgment is affirmed. We have elected to reverse the dissolution of marriage. Dissolving the marriage would, in the event of the death of one of the parties, prevent the other party from being a surviving spouse for the purposes of inheritance and rights to participate in qualified benefit plans.

[1] Section eight of the motion to reargue is entitled: "Real Estate: The [defendant] shall quitclaim 31 Winfield Drive, Shelton, CT to the [plaintiff] within [thirty] days of [j]udgment."

states: "The [c]ourt states in its findings that the [d]efendant artfully disguised his assets, that the evidence is replete with fraudulent transfers, false tax returns and property deeds that are devoid of truth. Additionally, the [c]ourt found that the [d]efendant was the sole cause for the breakdown of the marriage. There were sixty-nine exhibits that were entered during the six day trial. None of the exhibits supports the [c]ourt's findings that the [d]efendant disguised assets or that he is the sole cause for the breakdown of the marriage." The defendant took issue with the court's findings on the ground that they were not supported by the evidence. At no time did the defendant claim that the court had applied the wrong standard in reaching its decision that fraudulent transfers had occurred.[2] Moreover, with respect to the real property, the court did not order any remedies for fraud, e.g., rescission or reconveyance but, rather, considered the property transferred by the defendant to be part of the marital assets.

*Kavarco* v. *T.J.E.*, *Inc.*, 2 Conn. App. 294, 478 A.2d 257 (1984), has informed my analysis of the issue. "The

---

[2] The fact that the defendant did not question the standard of proof used by the court in his motion to reargue leads me to question whether the issue has been preserved for appellate review. "[O]ur Supreme Court has made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial. . . . This same principle requires parties to raise an objection, if possible, when there is still an opportunity for the trial court to correct the proposed error. . . . When we speak of correcting the claimed error, we mean when it is possible during that trial, not by ordering a new trial." (Internal quotation marks omitted.) *Macy* v. *Lucas*, 72 Conn. App. 142, 158, 804 A.2d 971, cert. denied, 262 Conn. 905, 810 A.2d 272 (2002). "[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Histen* v. *Histen*, 98 Conn. App. 729, 737, 911 A.2d 348 (2006). I note that the defendant failed to ask the trial court to articulate the standard of proof it used in deciding the claims at issue. See Practice Book § 66-5.

litigants and the factfinder must know at the onset of the trial what standard of proof is to be applied. . . . In the event that the memorandum of the trial court is silent as to the standard of proof used, it will be assumed that the one ordinarily applied in most civil cases, that of a fair preponderance of the evidence, was used. . . . If the trial court neither states *nor implies* that it is applying the proper standard of proof, it is impossible for an appellate court to determine whether the trial court, had it applied the required standard of proof, would still have rendered judgment as it did. . . . Whether the trial court has held a party to a less exacting standard than that which the law requires is a question of law, and, as such, is reviewable." (Citations omitted; emphasis added.) Id., 297. The court's memorandum of decision in this case is particularly harsh in tone and language with respect to the defendant, which supports the inference that the court's findings were made on the basis of clear and convincing evidence.[3]

On August 16, 2006, the court held a hearing on the defendant's motion to reargue. Throughout her argument, Barbara stated that there was insufficient evidence that the defendant fraudulently conveyed certain

---

[3] Examples of the court's language include, but are not limited to, the following excerpts from its memorandum of decision: "While the [defendant] would like to present the financial aspects as another straightforward wage earner case, the evidence belies and refutes this. After six days of trial, the court is satisfied that the [defendant] in complicity with his sisters sought to take financial advantage of the [plaintiff] by deceitfully clever means. Unfortunately, the [defendant] has artfully disguised his assets so that a substantial portion of his equitable estate has been reduced. The [plaintiff] has not made [the defendant's] sisters or his parents parties to this action, so this judgment may appear lopsided, but a close look at [the defendant's] machinations will make the result transparent. The nefarious dealings start with the 95 Park Avenue, Shelton, property. . . . The other transactions are less transparent. The court finds that the defendant and his two sisters lack credibility. . . . A review of all of the testimony shows an obvious manipulation of [the defendant's] assets with the connivance and assistance of his family. The evidence is replete with fraudulent transfers, false tax returns and property deeds that are devoid of truth."

real property. The following colloquy took place between counsel for the defendant and the court.

"[The Defendant's Counsel]: There is no evidence in this case, not one iota of *clear and convincing,* okay. That's the first basis. . . . [T]he party seeking to set aside a conveyance as fraudulent bears the burden of proving that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations. That's not the case here, Your Honor. It's not the case. You've got to first prove that. Now, the question becomes—

"The Court: Did he get something from his sisters?

"[The Defendant's Counsel]: He didn't get anything, Your Honor, from his sisters. Even if—even if he did—

"The Court: Come on, [counsel].

* * *

"[The Defendant's Counsel]: But fraud is a very serious allegation; that's why it's *clear and convincing.* You've got to prove it. . . . And if the facts, Your Honor, don't support it, it's clearly erroneous. . . .

"The Court: The court's got a job to do, and that's how I saw it." (Emphasis added.)[4]

Moreover, it is no secret to practicing lawyers that fraud must be proven by clear and convincing evidence. In fact, the transcript of the hearing on the motion to reargue makes it perfectly clear that Barbara was aware of the standard when she challenged the court's findings. Barbara stated that fraud was a serious allegation that had to be proven by clear and convincing evidence.

---

[4] At the conclusion of the hearing on the defendant's motion to reargue, the court ordered the plaintiff to file a memorandum of law. In her memorandum of law, the plaintiff argued that there was clear and convincing evidence that the defendant conveyed certain property fraudulently.

The court stated that that was how it "saw it." As noted in footnote 2 of this opinion, the defendant never came out and asked the court to articulate the standard of proof that it applied. This court often has noted that an appellant may not choose one course of action at trial and take another turn on appeal if the trial court's decision is not to its liking. See *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005). "In the absence of an articulation, we presume that the trial court acted properly." (Internal quotation marks omitted.) *Champagne* v. *Champagne*, 85 Conn. App. 872, 879, 859 A.2d 942 (2004); see also *State* v. *Rosario*, 39 Conn. App. 550, 560, 665 A.2d 152 (1995) ("[w]e are entitled to presume that the issuing judge properly considered all the facts submitted for his consideration"), rev'd on other grounds, 238 Conn. 380, 680 A.2d 237 (1996).

In sum, the defendant's counsel argued to the court that there was no clear and convincing evidence of fraudulent conveyances, implicitly indicating that she recognized that this was the standard the court had in fact used. The court disagreed with the argument, responding, "that's how I saw it." All language is contextual. The language the court used in responding to Barbara's arguments makes it clear, implicitly, that the court had utilized the clear and convincing standard. See *Patrocinio* v. *Yalanis*, 4 Conn. App. 33, 36, 492 A.2d 215 (1985). Moreover, as the majority notes, "the court's findings are amply supported by the evidence." In my opinion, it elevates form over substance in this equitable proceeding to remand this case for another hearing because the court failed in its memorandum of decision to state explicitly the standard of proof applied, especially in the absence of a motion for articulation.

For the foregoing reasons, I respectfully dissent.